## WOODWARD *v.* JEWELL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

No. 310. Argued April 15, 1891. — Decided May 11, 1891.

The amount involved in this case, when interest is properly computed, is sufficient to give the court jurisdiction.

A contract by a mortgagee, made on receiving the mortgage, that he will hold the securities, and that the mortgagor may " sell the property named in said deeds and make titles thereto, the proceeds of the sale to go to the credit of " the mortgagee, gives to the mortgagor power to sell for cash, free from the mortgage, but not to exchange for other lands; and does not cast upon the purchaser for cash the duty of seeing that the mortgagor appropriates the proceeds according to the agreement.

Such a contract is not a power of attorney to the mortgagor to sell land of which the title is in the mortgagee, but only the consent of a lien holder to the release of his lien in case a sale is made, and it is not required by the laws of Georgia to be executed before two witnesses.

The conveyance to the mortgagee in this case was a mortgage and not a deed conveying the legal title.

THE case is stated in the opinion.

*Mr. Walter B. Hill* for appellants.

*Mr. Clifford Anderson* for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

On April 10, 1884, appellants filed their bill in the Circuit Court of the United States for the Southern District of Georgia, praying for the foreclosure of a mortgage. The mortgagor and debtor was Daniel A. Jewell. The other defendants were alleged to have interests in the mortgaged

property. On October 29, 1885, a decree was entered dismiss-
ing the bill. The opinion filed at the time is reported in 25
Fed. Rep. 689. On December 30, 1885, a petition for rehear-
ing was filed, which was granted; but on the 17th of June,
1886, a second decree was entered reaffirming the ruling in the
first. Some question was made on the argument as to whether
the amount in controversy at the date of either of the two
decrees was over five thousand dollars. The amount alleged
to be due was $4099.13, "besides interest, all of which, to-
gether with said debits and credits, will more fully appear by
a reference to a copy statement of account, hereto annexed
and marked 'Exhibit C.'" On reference to such exhibit,
an account appears stating a balance due May 4, 1883, of
$24,882.46. Thereafter certain credits are shown of dates
June 5, 1883, January 1, 1884, and March 20, 1884. These
credits, applied on the balance, reduce the amount thereof to
the sum stated, $4099.13; and that final balance is approved
by the assignees of Daniel A. Jewell, as the amount due, "ex-
clusive of interest on the account, which they are entitled to
from May 4th, 1883." Now, if interest be computed on simply
this balance of $4099.13, at seven per cent, the then legal rate
in Georgia, from May 4, 1883, to the date of the last decree,
the amount would be less than five thousand dollars; but that
is not the true method of computation. The balance due on
May 4, 1883, was $24,882.46. Interest on that amount should
be computed to the time of first payment, then the payment
applied, (it exceeding the interest up to that time,) and a com-
putation made of the interest on the balance to the time of
the second payment, and so on. By this method of computa-
tion the amount due at the date of either decree would be in
excess of five thousand dollars. This court, therefore, has
jurisdiction of the appeal.

Upon the merits, it appears that Daniel A. Jewell was the
owner of a cotton mill in Georgia; that he consigned its
products to the appellants, commission merchants in New York
city. This business had been going on since 1870. On Janu-
ary 17, 1878, Jewell, having drawn on appellants largely in
excess of his shipments, was indebted to them somewhere in

the neighborhood of thirty thousand dollars. To secure them for these advances, he executed mortgages on several pieces of property owned by him in Georgia. Among these mortgages was one covering a tract of land of about 760 acres, known as the Hurt Place, and another of about 750 acres, a part of the Myrick homestead tract. At the time of the execution of these mortgages a contract was entered into between the appellants and Jewell, by which the appellants agreed to hold the securities for three years; and also, among other things, stipulated that "the said Woodward, Baldwin & Co. further agree that the said Jewell shall have full right and permission to sell the property named in said deeds and make titles thereto, the proceeds of sale to go to the credit of the said Woodward, Baldwin & Co." This agreement was signed by both parties and witnessed before a notary public. In pursuance of the authority given by this stipulation, on February 8, 1879, Jewell conveyed to one Mary E. Daniel three hundred and fifty-three acres of the Hurt lands for the expressed consideration of one thousand dollars, and on February 1, 1882, conveyed the balance of the Hurt lands, as well as the Myrick tract, to Steth P. Myrick, for the expressed consideration of four thousand and thirty-nine dollars. The validity and effect of these two conveyances is the matter in dispute.

But one construction can be placed upon this stipulation. It gave to Jewell authority to sell and transfer title, discharged of the lien of the mortgage. It did not empower him to sell subject to the mortgage, that is, to transfer simply his equity of redemption, for that he had without the stipulation; and it cannot be supposed that a provision meaning nothing was deliberately inserted in the contract. Further, the provision that the proceeds should be applied to the credit of the appellants, makes it clear that they intended to give him power to transfer a full and unincumbered title. Neither can there be any doubt that Jewell understood that he could, and intended to convey a full, unincumbered title, and that the grantees supposed they were receiving such title. The deeds contain no suggestion of any incumbrance, and purport to transfer the title, notwithstanding the fact that there is no warranty

therein, and the parol testimony, so far as that is competent, establishes the fact that such was the purpose and understanding of all the parties. Nor was the duty cast upon the purchasers of seeing that Jewell appropriated the proceeds in accordance with the stipulation. That was a matter between Jewell and the appellants, and in respect to which they trusted him. Nor, further, can there be any substantial question that the parties acted in entire good faith. It is true that Jewell did not turn over the proceeds directly to the appellants, but, according to his testimony, he supposed that the appellants were abundantly secured by their mortgages on his other property. There was apparently good reason for this belief. He considered his factory, which was included in one of the mortgages, worth at least sixty thousand dollars, an amount sufficient to twice pay his entire indebtedness to appellants; and after he heard complaint from them in respect to the second conveyance, he shipped to them enough of the products of his mill to cover, as he thought, the money he had received.

As against this appellants urge that this contract was invalid as an authority to convey, because not executed before two witnesses; and in support of this two sections of the Code of Georgia are quoted, to wit, 2182 and 2690, Code 1873.. The latter requires a deed to lands to be attested by at least two witnesses; and the former provides that "the act creating the agency must be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency is created." But this contract was not the creation of an agency to sell lands belonging to the appellants. The title to the lands was all the while in Jewell. The instrument which Jewell executed was a mortgage, and, by section 1954 of the same code, "a mortgage" "is only a security for a debt, and passes no title." By section 1955 it is provided that "no particular form is necessary to constitute a mortgage. It must clearly indicate the creation of a lien, specify the debt to secure which it is given, and the property upon which it is to take effect." The section also provides the mode of execution. All these matters are found in this instrument. It is true that in the middle of the instrument, after

the granting clause and the description, and before the war-ranty and defeasance clauses, is found this sentence: "This deed, made, executed, and delivered under the acts of the legislature of Georgia of 1871 and 1872, and found in the Code of 1873, sections 1969, 1970, 1971." Appellants contend that according to these sections the title passed to them; and that, therefore, the title being in them, the contract was, for the reasons above given, insufficient to authorize a sale by Jewell. But these sections are in an article entitled " Sales to secure debts;" and apply only to those cases in which an absolute deed is made of the property, and a bond taken for reconveyance. The first part of section 1969 discloses what instruments are referred to. It reads: " Whenever any person in this State conveys any real property by deed to secure any debt to any person loaning or advancing said vendor any money, or to secure any other debt, and shall take a bond for title back to said vendor upon the payment of such debt or debts, or shall in like manner convey any personal property by bill of sale, and take an obligation binding the person to whom said property was conveyed to reconvey said property upon the payment of said debt or debts, such conveyance of real or personal property shall pass the title of said property to the vendee." But although this instrument recites that it is executed under those sections, in fact it was not, for no bond for title back was taken, nor was the instrument signed by the grantees, and it was, notwithstanding the declaration in it, only a mortgage. In the case of *Lackey* v. *Bostwick*, 54 Georgia, 45, the instrument considered was a deed absolute on its face; and, while it was contended that it was in fact executed as security for an indebtedness, yet such a defence was cognizable only in equity, and on the face of the instrument the legal title passed. In *Woodson* v. *Veal*, 60 Georgia, 562, the instrument was a deed absolute on its face. It was, however, intended as security for a debt, and contained an agreement that the grantor might repurchase within a specified time; and that the grantee, on failure to so repurchase, might sell in a certain way. It also contained provisions as to possession and costs and expenses. This instrument was held effective to pass the legal title. The

court observed : " Where the parties do not intend a title, but only a legal mortgage, why should they adopt an absolute deed instead of a mortgage ? It is precisely that they do intend, and deliberately intend, title to pass, that they eschew the mortgage and make use of a deed absolute." The converse of this is true in the case at bar. The appellants not only accepted this instrument in form a mortgage, but they understood and intended a mortgage. In the bill of complaint it is expressly averred that " the instrument is in legal effect a mortgage deed ; " and, also, that " no bond to reconvey said property upon the payment of said indebtedness was executed." It is also alleged that the sales by Jewell to Myrick were made " subject to the lien of said mortgage to your orators." The contract, therefore, is not to be taken as a power of attorney to Jewell to sell land the title of which was in the appellants, but simply as a consent of lien-holders to the release of their lien upon a sale made by the mortgagor of the real estate described in the mortgage.

It is further urged by appellants that the considerations of these transfers were so far below the real value of the property, as to indicate bad faith on the part of Jewell and his vendees; or if not that, that the transfers are to be adjudged as made subject to the lien of appellants' mortgage. We cannot agree with this contention. The testimony as to the value is conflicting ; but it is very far from making clear that there was a great disproportion between value and consideration, such a disproportion as would overthrow the evidence of good faith and the understanding and intent of the parties, furnished by the other and positive testimony respecting the same. Jewell had never seen the land ; he bought it at a bankrupt sale in 1874 ; bought it partly to protect himself, as he had a claim against the bankrupt, though to perfect his title he was compelled to pay off certain liens, which made the property cost him perhaps double what he received for it. He wanted money ; had been trying to sell the property ever since he purchased it; had advertised it for sale ; and, so far as appears, finally disposed of it on the best terms he could get. So, although he lost money by the transaction, yet if he

and his vendees acted in good faith, and intended the one to transfer and the other to receive an unincumbered title, the disproportion between the value and the consideration does not justify the court in annulling the transfers, or in making a new agreement between the parties, or in compelling the vendees to pay more than they had agreed to.

Thus far we have considered these two transfers by Jewell as alike, and for the reasons indicated find no reason to differ from the conclusions reached by the trial court; but they were not alike. The consideration of the deed to Myrick was cash. It was a sale, and was within the authority given to Jewell. The consideration of the conveyance to Mrs. Daniel was a conveyance by her to Jewell of other lands. The transaction was an exchange, and not a sale. This was outside of the authority of Jewell. It is a general proposition that power to sell gives authority to sell for cash only, and does not uphold a mere exchange. *Morrill* v. *Cone*, 22 How. 75; Perry on Trusts, § 769; *Taylor* v. *Galloway*, 1 Hammond, (1 Ohio,) 232; *Cleveland* v. *State Bank*, 16 Ohio St. 236; *Russell* v. *Russell*, 36 N. Y. 581; 1 Devlin on Deeds, §§ 370, 373, 436; *Lumpkin* v. *Wilson*, 5 Heisk. 555.

This is the general rule where there is given simply a power to sell; and in this case, that the authority was limited to a sale for cash, is evident from this language of the provision: "The proceeds of sale to go to the credit of the said Woodward, Baldwin & Co." That which was due to these appellants was money, and the proceeds of the sale were to go to their credit. That implies that money was to be received and applied on their account. The mortgage from Jewell to appellants was recorded in the county in which the land was situated. Mrs. Daniel took the property subject to that recorded lien, and can claim no discharge therefrom, save as was authorized by the language of this stipulation. That permitted a sale, and a sale for cash only. The land which she conveyed to Jewell, he thereafter sold and conveyed to his nephew. It is, therefore, beyond the reach of the appellants. Nor is it shown that any money was ever applied on appellant's account, which could be considered as an equivalent of

the land sold; for while Jewell testifies to forwarding the products of his mill to them when he heard of their complaint, his testimony is that he forwarded what he supposed was enough to cover the money that he had received.

Our conclusion, then, in reference to this tract of three hundred and fifty-three acres is that Jewell had no authority to exchange it for other lands; and that a mere exchange did not divest the land from the lien of the recorded mortgage. On this ground, and on this alone, the decree must be reversed. The order, therefore, will be that the decree be

*Affirmed so far as respects the parties interested in the land conveyed to Steth P. Myrick by the deed of February 2, 1882; that otherwise it be reversed, and the case be remanded with instructions to enter a decree against Jewell for the amount due from him, and a decree of foreclosure and sale of the three hundred and fifty-three acres of land conveyed to Mrs. Daniel by the deed of February 3, 1879. One-half of the costs of this appeal will be paid by the appellants, and the other half charged as costs in the foreclosure against the last-named tract.*

MR. JUSTICE BRADLEY was not present at the argument of this case and took no part in its decision.