[No. 1686.]

## N. EAGER, RESPONDENT, *v.* C. A. MATHEWSON, APPELLANT.

CONTRACTS — CONSTRUCTION.— WRITTEN AND PRINTED PROVISIONS—INCONSISTENCIES—RECONCILIATION.

1. When the written and printed parts of a contract are antagonistic, the written must generally control; but, if reconciliation can be reasonably brought about, the contract should be construed in accordance with such reconciliation.

2. A contract recited that defendant had received a part payment on 300 head of cattle, "consisting of about the number of each class as given below," and then followed a schedule of various kinds of cattle, the total thereof being a little over 300; and under the title "Remarks" it was recited that defendant agreed to put in all the cattle he should get on his contract with four named persons, and all the small bunches that should come with them, and 50 or more of his own. The contract was printed, except the phrase "300 head," and the matter contained under the title "Remarks." *Held*, that the contract meant that the defendant should deliver about 300 head of cattle, to be made up of all the cattle he should receive on the four contracts named, and from the small bunches, and 50 or more of his own, in order to make up the 300, and did not mean that defendant was merely required to deliver the exact number that he might obtain on the four contracts, from the small bunches, and 50 of his own.

3. Where, in an action for breach of a contract, under which plaintiff had paid the defendant certain forfeit money, it appeared that defendant had been in default, but plaintiff had not, an instruction as to apportioning the forfeit money could not be complained of on appeal by defendant.

APPEAL from the District Court of the Fourth Judicial

District of the State of Nevada, White Pine County; *Geo. F. Talbot*, Judge.

Action by N. Eager against C. A. Mathewson. From a judgment in favor of plaintiff, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*E. S. Farrington* and *Chas. A. Walker*, for Appellant:

I. There is not a case in the books where a defaulting vendee has been permitted to recover forfeit money from a vendor who is not in default, except by consent of the latter. , If Mathewson was within the letter of his contract, when he tendered the cattle to Eager on June 2, 1898, Eager committed a breach of the contract when he refused to pay for or receive the cattle, and could not forfeit the money. · (*Neis* v. *O'Brien*, 41 Pac. 59; *Walter* v. *Reed*, 52 N. W. 682–4; *Gibbons* v. *Hayden*, 44 Pac. 445; *McKinney* v. *Harvie*, 35 N. W. 668; *Livestock Co.* v. *Blackburn*, 70 Fed. 949; *Woodbury* v. *Turner*, 29 S. W. 299; *Creswell R. & C. Co.* v. *Martindale*, 63 Fed. 84; *Lexington M. & E. Co.* v. *Neuens*, 60 N. W. 60; *Ketchum* v. *Evertson*, 7 Am. Dec. 384; *Sennett* v. *Sheehan*, 7 N. W. 266; *Rayfield* v. *Van Meter*, 52 Pac. 666; *Hansborough* v. *Peck*, 72 U. S. 497; *Clock* v. *Howard*, 55 Pac. 713–717; *Joyce* v. *Shafer*, 32 Pac. 320; *Easton* v. *Montgomery*, 90 Cal. 308; *Bailey* v. *Lay*, 33 Pac. 407; *Wheller* v. *Mather*, 8 Am. Rep. 683; *Johnson* v. *Evans*, 50 Am. Dec. 680; *Way* v. *Johnson*, 58 N. W. 552.)

II. It was error for the court to instruct the jury that they could apportion the forfeit money. The court attempts to create an exception to the rule by stating that, when the seller, though acting within the letter of the contract, does not deliver as many cattle as it was estimated that he would deliver, it is proper for the court to apportion the forfeit money between the seller and the buyer. The instruction is erroneous in that it ignores the very material fact that the buyer may be in default. Let us suppose that the buyer prevented the seller from gathering the cattle, or himself bought the cattle on the contracts, so that the seller could not obtain them—would it be proper to apportion the forfeit money? Does not the instruction involve a contradiction? Either the seller is in default, or he is not. If the seller is

within the letter of the contract, he is not in default. And if then the buyer refuses to take the cattle offered, it is the buyer who is in default, and under the rule, to which there are no exceptions, he cannot recover the forfeit money.

III.   In the case of *Creswell R. & C. Co.* v. *Martindale*, 63 Fed. 84, there was a contract to deliver 5,021 steers, to weigh not less than 900 pounds each, at $28. The sum of $5,000 was paid down. When the fourth delivery was made, the vendor offered 980 steers, of which the purchasers rejected 280 head on alleged ground of underweight. The cattle were rejected in good faith, but wrongfully, because each weighed over 900 pounds. The vendor then notified the buyers that they had violated the contract and that no more cattle would be delivered. The buyers brought suit for damages for the failure to deliver the remainder of the cattle and for the forfeit money. The lower court gave judgment for the plaintiff. The supreme court held that the purchaser, in rejecting the 280 cattle, had committed the first substantial breach of the contract, and that he who commits the first substantial breach of contract cannot maintain an action against the other contracting party for a subsequent failure. The decision of the lower court was reversed. In the case at bar, Eager, erroneously supposing that Mathewson's failure to deliver more than 170 head of cattle was a breach of contract, refused to accept the cattle himself, was guilty of the first substantial breach of contract, and therefore has no cause for action.

IV.   The courts have never held that a sale was void or voidable because of an erroneous estimate. Neither do they grant any relief except where an estimate has been so grossly wrong as to raise the presumption of fraud or mistake in the very essence of the contract. Where a tract of land is sold by metes and bounds, and the acreage is given, followed by the words "more or less," or by words of like import, neither party will be entitled to any relief on account of any deficiency or surplus in the acreage. The question is whether the sale is by estimate or measurement; if by estimate and the sale is fair, the buyer takes the risk. In the case of *Doctor* v. *Fruch*, 44 N. W. 652, there was a contract to sell 49 acres of land with buildings and improvements thereon,

being the same property occupied by the vendor, for $20,000. The ranch contained only 32½ acres instead of 49. The court held that, as 49 acres was an estimate, there could be no abatement from the price. In the case at bar, the 300 head was merely an estimate. The cattle to be delivered were the cattle which Mathewson obtained on his contracts with Halsted and others, and 50 or more head of Mathewson's own cattle. This was Eager's understanding of the contract. (See Statement.) This was also the interpretation placed on the contract by the court itself. (See Statement.) The word "about" in the contract is not in the nature of a warranty. It is only an estimate of probable amount, in reference to which good faith is required.

V.   The court erred in refusing plaintiff's first instruction. It was the duty of the plaintiff to minimize his damage, if he suffered any; and if he could have purchased other cattle in the vicinity at less than the market price, it was his duty to do so. If he could purchase other cattle equally good for the prices named in the contract, he might have prevented any injury or damage. And this the jury were entitled to take into consideration. Plaintiff cannot recover for any loss which he might have reasonably prevented. (*Lawrence* v. *Porter*, 26 L. R. A. 167; *Marsh* v. *McPherson*, 105 U. S. 709; *Miller* v. *Mariners' Church*, 20 Am. Dec. 345; *Parsons* v. *Sutton*, 66 N. Y. 96.) It is in evidence and undisputed that Mr. Eager could have purchased the McDugal 500 head for $21 per head, and these cattle would have been cheaper than Mr. Mathewson's.

*Henry Rives*, for Respondent:

I.   Plaintiff quotes, in the first page of his brief, from an instruction which the court gave of its own motion, and he contends that the court, by this instruction, found as a fact that the defendant had "in good faith and with reasonable diligence fully performed the conditions of the contract on his part." Even a casual examination of this portion of the court's instruction (if we could be permitted to separate this quoted portion from the whole instructions given by the court) will show that, while the instruction may be admitted to be strongly in favor of the defendant's contention in the

case, it submits to the jury the alternate proposition that the defendant could not recover, unless he used "good faith and reasonable diligence," in procuring all of the cattle that he could get. (See the instruction referred to.) The jury have found in favor of the plaintiff as to this alternative proposition, embraced in the instruction, and whatever the opinion of the counsel for the defendant may be as to the "good faith," which he endeavored to establish on the trial, or whatever may be the opinion on this subject by any other person who witnessed the proceedings, the plaintiff submits that conflict on this point is shown, and that the verdict should not be disturbed. Counsel for defendant says "unless the court has wrongly interpreted the contract, the defendant was not in default." Assuming that the court considered that Mathewson did offer to deliver the cattle that he claims, still it reserved in the instruction the great question as to whether Mathewson acted in "good faith and with reasonable diligence." However *good the faith* of the defendant may have been, the other question of reasonable diligence was also submitted by the instruction, and on this point alone the jury may have concluded, as they did, in favor of the plaintiff.

II. In appellant's brief, he correctly states that "the plaintiff does not ask a return of the forfeit money; he merely asks for $1,500 damages." This being true, the plaintiff feels at liberty to submit that the portion of the instruction (concerning forfeit money) given by the court of its own motion was irrelevant and immaterial, and that it was not calculated to mislead the jury, excepting in favor of the defendant, and therefore he will not be heard to complain of an instruction which, his whole argument endeavors to establish, was in favor of himself. Besides, the plaintiff contends that no particular portion of the instructions given by the court should be selected or quoted as embodying the entire views of the court, but that *all* of the instructions given by it, at the request of the respective parties, should be construed as a whole, and taking this view, the plaintiff contends that questions other than those submitted through the court's own instruction were submitted to the jury, and found in favor of the plaintiff.

III. The fact that $600 was paid defendant as forfeit

money was merely incidentally introduced into the evidence by the plaintiff as constituting one of the elements of damages, and not that the plaintiff ever sought or contended that he should recover the $600, and that this is established by the fact that the plaintiff never made any demand for the return of the forfeit money, but simply for "$2.50 per head damages."

IV.   In respect to another clause of the brief I would say that the rule, as I understand, laid down by the courts, is that where a party views the article, estimates the quantity, whether it be a bunch of cattle, or a parcel of land, or a pile of guano, or any other subject of purchase, and the matter is estimated, then, in that case, the courts will not grant relief if the estimate is erroneous, in the absence of fraud.   The question of fraud in this case was submitted to the jury, and found against the defendant so far as their consideration on that subject is concerned.

*E. B. Crichton*, for Respondent:

I.   The contract is not subject to the interpretation placed upon it by the defendant.   It provides plainly for the sale and delivery of about 300 head of cattle, and, as a substantive, independent agreement, provides that the defendant, Mathewson, shall put in all the cattle he gets on his contracts with Halstead, *et al.*, and fifty or more of his own cattle.   This contract so entered into was clear and definite, and parole evidence to vary its meaning was not admissible under familiar rules.   It would be dangerous indeed if parties who have reduced their contracts to writing were permitted to give evidence as to prior parole stipulations and negotiations in order to limit and vary the terms.   (See multitude of cases collected in 20th Century Digest, sec. 1756, *et seq.; Menzies* v. *Kennedy*, 9 Nev. 152.)

II.   Whether or not the custom was proven, the question as to whether or not there had been a reasonable performance, or tender of performance, of the contract to deliver about 300 head by the defendant in tendering only 178 head, is properly a question to be left to the jury.   (*Clapp* v. *Thayer*, 112 Moss, 296.)   The word "about," in *Clapp* v. *Thayer*, is "only" for the purpose of providing against acci-

dental variations arising only from slight and unimportant excesses or deficiencies in number. (*Brawley* v. *U. S.*, 96 U. S. 168.)

III. As to the instruction given by the court of its own motion in respect to a division of the forfeit money, and which is criticized at length by counsel, we have to say that, as a rule for the equitable approximation of division of a loss growing out of inevitable and unforeseen conditions, it might be wise under some circumstances to adopt it. We do not see, however, that it could be properly adopted in a case such as this. We complain of its application here because under it possibly the jury acted in reducing our just damages from $600 or more to the paltry $500 awarded. However, for practical reasons readily appreciated by the court, we have not chosen to ask a new trial, and prefer to accept the smaller sum rather than litigate further. It certainly cannot avail the appellant to complain of an instruction by which he has profited to our loss; and the rule is well settled in all jurisdictions that an incorrect instruction on a measure of damages which could not prejudice the party complaining will not be treated as appealable error.

IV. The cases cited by counsel in his discussion of the effect of the word "about" do not bear out the conclusion sought to be drawn from them. Each and every one properly understood is plainly distinguishable from the case at bar. For instance, in *Brawley* v. *U. S.*, 96 U. S. 168, cited by us, it will be seen that the contract was to supply so much cord wood as should be needed for a particular purpose, and that the 880 cords was plainly but an estimation as to the quantity. Other similar cases are: *Harrington* v. *Mayor*, 10 Hun, 248; *Callmeyer* v. *Mayor*, 83 N. Y. 116. It certainly cannot be urged that Eager in this case needed cattle for any particular purpose, or that the parties were stipulating with reference to supplying any demand or need of his. So in the case of *Day* v. *Cross*, 59 Tex. 595, and in *Morris* v. *Wibaux*, 43 N. E. 837.

V. The evidence, it is claimed, does not support the verdict of the jury. We assume that the rule is well settled in this state that, where there is substantial evidence supporting the verdict, it will not be disturbed. In this case it not

only satisfied the jury, but on motion for a new trial was deemed satisfactory by the lower court.

*E. S. Farrington* and *Chas. A. Walker*, for Appellant, in reply:

I.  Appellant claims that the court erred in instructing the jury that where the seller, though acting within the letter of the contract, does not deliver as many cattle as it was estimated that he would deliver, it is proper for the jury to apportion the forfeit money between the seller and the buyer. The respondent practically admits that the instruction is not correct.  He does not even attempt to cite any authorities in its support.  He simply argues that the interpretation which is given to the contract by the court (see instructions 8, 9, 10) is wrong.  Appellant assigns as error an oral instruction.  Respondents reply by pointing out that the statement of the law in not less than three other instructions is erroneous.  It would seem to be a proper case for a new trial. However, it has been repeatedly decided by this court that it will only examine errors assigned by the appellant.  No other alleged errors in the instructions can be considered than the errors assigned by the appellant.  (*Dennis* v. *Caughlin*, 22 Nev. 453; *Moresi* v. *Swift*, 15 Nev. 220; *Maher* v. *Swift*, 14 Nev. 332; *Seaward* v. *Malotte*, 15 Cal. 307; *Dougherty* v. *Henarie*, 47 Cal. 9.)

II.  That parole evidence cannot be admitted to vary the terms of a written contract, is undoubtedly the law.  It is unnecessary to cite authorities in support of such a familiar rule.  This rule, however, has no application in the present case, because no testimony was offered for that purpose. There was no pretense that the agreement introduced in this case was not the agreement of the parties; but each party contended for a different interpretation of the contract.  The plaintiff contended that the contract was simply an agreement to sell about 300 head of cattle, and that "about" meant within 10 per cent.  (*a*) The written controlled the printed portion of the contract.  (Clark on Contr. p. 594: Bishop on Contr. sec. 413; *Clark* v. *Woodruff*, 83 N. Y. 522.)  (*b*) The contract was to sell all the cattle which Mathewson could obtain on his agreements with Dugan, *et al.*, and 50 or more

of his own cattle, estimated all told to be about 300 head.
(c) It was the duty of the court to interpret the contract. (1
Jones on Evidence, sec. 172.) The court permitted evidence
of the acts and negotiations of the parties at the time the
contract was entered into to be introduced in evidence. This
testimony was admitted without objection, and it was not
contradicted. The court also permitted the defendant to
introduce in evidence the contracts with Dugan, Tioni, *et al.*
Plaintiff objected to the admission of these contracts, but the
objection was properly overruled. (Jones on Evidence, secs.
455–458.)

III. This evidence was admitted not for the purpose of
contradicting the contract, but in order that the court might
by means of this evidence put itself in the situation of the
parties to the instrument and thus interpret its meaning.
(*Erie Cattle Co.* v. *Guthrie*, 44 Pac. 984; *Bell* v. *Rankin*, 40
Pac. 1094.)

IV. To those authorities which have been cited in appellant's
opening brief to the effect that the words "about 300 head"
are merely words of estimate, we will add the following case:
*Wolf* v. *Wells, Fargo & Co.*, 115 Fed. 32. Here the written
offer, which was accepted, for the sale of cement to be used
in the construction of a certain building, stated that it named
a price "for what you may require, on or about 5,000 barrels,
more or less." In this case Judge Hawley held that the con-
tract was not to deliver any particular quantity, but to deliver
so much as might be required in the construction of the
building. The designation of "about 5,000 barrels, more or
less," was held to be merely the *estimate* of the parties as to
the quantity which would be required.

V. Let us look at the first and second rules. The first
one is this: Where a contract is made to sell or furnish
certain goods identified by reference to independent circum-
stances, and the quantity is named with the qualification of
"about," or "more or less," or words of like import, the con-
tract applies to the specific lot; and the naming of the
quantity is not regarded as in the nature of a warranty, but
only as an estimate of the probable amount, in reference to
which good faith is all that is required of the party making
it. Our case comes directly within this rule. The contract

is "to sell certain goods"—viz, "cattle"—"identified by reference to independent circumstances"—viz, the four contracts with Halsted, Tioni, and the others; the quantity is named with the qualification of "about"—to wit, "about 300." Therefore the first rule applied to this case. In other words, the naming of the quantity is "not a warranty, but only an estimate of the probable amount, in reference to which good faith is all that is required of the party making it." There was nothing whatever in the testimony to show *mala fides*.

VI. Coming to the second rule laid down by Mr. Justice Bradley, in *Bradler* v. *U. S.* (96 U. S. 168): "But when no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quality specified is material, and governs the contract." The very first words of this rule are fatal to plaintiff's contention. The rule says: "When no such independent circumstances are referred to." In our case not only are "such independent circumstances referred to," but they are referred to in that part of the contract which demands the greatest consideration, because it is written, not printed, and is therefore the surest index as to what was primarily in the minds of the contracting parties. Rules 1 and 3, then, laid down in the United States Supreme Court as governing this class of cases, apply directly to the case under consideration. Rule 2, upon which alone the plaintiff could stand, has no application to the case whatever.

By the Court, FITZGERALD, J.:

The litigation in this case grew out of a partly printed and partly written contract for the purchase of cattle. The following is a copy, the written portions being shown herein by italics:

*"Stockville, Nev., May 15th* 1898.

"Received from *N. Eager* the sum of *Six Hundred* Dollars, the receipt of which is hereby acknowledged as part payment and forfeit money on about *three hundred head* of good, average, smooth, full age, thrifty cattle, consisting of about the number of each class as given below, and at the prices there given:

About 50 head of One-year-old steers at $18.00 per head.
"      30    "      " Two     "      "      "      "   22.00   "      "
"      25    "      " Three and four year
                              old Steers ................" 27.00   "      "
"      —     "      " Four-year-old Steers "  27.00   "      "
"       8 large Bulls............ ....................." 16.00   "      "
"      — Head of Stags............................"  ——     "      "
"      20 head of One-year-old heifers "  14.00   "      "
"      20 head of Two-year-old heifers "  16.50   "      "
"      80 head of Cows 3 to 9 years old " 19.50   "      "
"      65    "      "      "   with calves by
                              side...................." 25.00   "      "

"Calves to not be counted but thrown in *free of charge.*

"The above cattle are to be delivered at *Willow creek in Steptoe Valley, Nev.*———in good healthy condition and in good shape for driving or shipping, from 1st day of *June* to *2d* day of *June* 1898 at the option of buyer, he to give——— days notice of date of delivery. Said cattle to be carefully handled, and not overdriven while being gathered and taken to place of delivery, and are not to include any cripples, swaybacks, blind or lame ones and no Holstein, Jersey or Mexican blood.

"Balance of Purchase price to be paid on delivery of cattle and completion of this contract.

"Remarks.

"*Mr. Mathewson agrees to put in all the cattle he gets on his contract with Geo. Halstead, John Tioni, Geo. Dugan, Eugene Locke & all the small bunches that come with them, and fifty or more of his own cattle branded S on left hip.*

"*C. A. Mathewson.*
"*N. Eager.*"

The primary question in the case was: What is the proper interpretation of this contract?

Appellant claims that under the proper interpretation he was not required to deliver any specified number of cattle; that, under the rule that written parts of contracts control printed, the written parts, under the head of "Remarks," in this contract, control the printed, in the main body of the contract; and that therefore he was to deliver to respondent only what he might obtain on the four contracts mentioned

in the contract in contest here, and from the "small bunches" and 50 of his own cattle. Such an interpretation would lead to this result: Had appellant delivered none from the four mentioned contracts or the "small bunches," or, say, one from each (that is, 5, and then, in addition, 50 of his own), he would, by thus delivering 50, or at most 55, head of cattle, adding 10 per cent by proved custom, have complied with both the letter and the spirit of his contract. We think this is not a correct interpretation. It carries the rule of superiority of written over printed matter too far; that is, to the annihilation of the printed matter, when all the parts, the written and the printed, can be reconciled with each other. We do not deny that, when the written and the printed parts of contracts are antagonistic and cannot be reconciled, the written should generally control; but when there is only apparent antagonism, and reconciliation is reasonably easy, we think the rule of reconciliation should govern.

Taking the contract in this light—that is, of reconciliation—appellant agreed to deliver to respondent about 300 head of cattle, to be made up of all the suitable cattle that he should get on his four contracts, and from the "small bunches" and 50 or more of his own cattle, should more than 50 be necessary to make up the number agreed upon, to wit, about 300. Taking the contract in this light, contended for by appellant, might have resulted in this: Respondent might have been compelled to receive and pay for a very large number of cattle. Suppose each of the appellant's four contractors had delivered the full number of cattle by him contracted for, and 10 per cent in addition, as the evidence shows that, by the custom of cattlemen, 10 per cent plus as well as 10 per cent minus is allowable; then respondent might have been compelled to receive and pay for as follows:

From Dugan ........................................................... 100
  "    Tioni ............................................................  34
  "    Halstead ........................................................ 100
  "    Locke............................................................  45
                                                                      ____
  Total.................................................................. 279

Ten per cent of 279 is 27, and adding this would make

306 (279+27=306). To 306 the 50 of appellant's own cattle added would make 356 (306+50=356), as the number that respondent might have been compelled to receive. Add to this 356, the possibilities under the words "or more" in the phrase "50 or more of his own cattle," and there might have been an indefinite number of cattle deliverable, under this view of the contract. For if appellant could, under the phrase "or more of his own cattle," have added as many as he may have chosen, he might have chosen to add 1,000, making 1,356, or, indeed, any number. It seems that the number deliverable under the contract inevitably turns upon the "three hundred" mentioned in the main body of the instrument of contract, and the reconciliation view above mentioned is the true one. It should, perhaps, be observed here that the pivotal words "three hundred," are not only in the main body of the contract, but are themselves in writing; and to this extent is removed any foundation of fact for invoking the rule of superiority of written over printed matter.

Appellant claims that the instruction given by the court as to apportioning the forfeit money. to wit, $600, was erroneous, and for this reason the judgment and order of the trial court should be reversed, and a new trial ordered. This would probably be true if the interpretation of the contract contended for by appellant were correct. For it would seem, under the authorities cited, that in general forfeit money paid on a contract cannot be recovered when the party receiving the forfeit money is in no respect in default. If the interpretation of the contract contended for by appellant were correct, then it would seem that there is nothing appearing in the matters before this court showing that appellant was in any respect in default. But believing, as we do, that the correct interpretation of the contract is that above given, to wit, for about 300 head of cattle, and that the delivery of only about one-half of that number, to wit, 150, was not a sufficient compliance with the terms of the contract on the part of the appellant, it follows that the error complained of by appellant, if it was error, was in his favor, and therefore he is not in a position to take advantage thereof.

There are some other assignments of error, but, if the view above stated be correct, they become immaterial.

It is ordered that the order of the trial court denying the motion for a new trial in this case, and the judgment following said order, be affirmed.

BELKNAP, C. J.:   I concur.

TALBOT, J., did not sit in this case, he having presided at the trial of the case in the court below.