[Civil No. 2361.   Filed July 23, 1925.]

[238 Pac. 392.]

# BABBITT BROTHERS TRADING COMPANY, a Corporation, Appellant, v. JOHN MARLEY and ROY BUTLER, Appellees.

1. CONTRACTS—CONTRACT TO BE CONSTRUED SO THAT EVERY PART SHALL BE EFFECTIVE.—A contract is to be construed, if possible, so that every part thereof shall be effective.

2. CONTRACTS — TYPEWRITTEN CLAUSE WILL PREVAIL OVER PRINTED CLAUSE IF IRRECONCILABLE THEREWITH.—If in a contract there appears a printed and a typewritten clause, which are irreconcilable one with the other, typewritten clause will prevail.

3. CHATTEL MORTGAGES—SALE TO ONE WHO HAS ACTUAL OR CONSTRUCTIVE NOTICE IS SUBJECT TO MORTGAGE LIEN—MORTGAGOR MAY SELL SUBJECT TO MORTGAGE LIEN.—When a chattel mortgage is given on property to secure the debt, natural presumption is that creditor intends to retain security he has taken and ordinarily any sale made to one who has actual or constructive notice of the mortgage is subject to such lien but mortgagor may at any time sell his interest in the property subject to such lien.

4. CHATTEL MORTGAGES—PROVISION THAT IF PROPERTY IS DISPOSED OF DEBT SHALL IMMEDIATELY BECOME DUE DOES NOT INVALIDATE SALE OF MORTGAGOR'S INTEREST TO PURCHASER.—Provision in chat-

---

1. See 6 R. C. L. 838.

2. Construction of contract which is partly written and partly printed, see notes in 60 Am. St. Rep. 95; Ann. Cas. 1913E, 967. See, also, 6 R. C. L. 848.

3. See 5 R. C. L. 443.

tel mortgage that if property is disposed of, debt shall immediately become due and permitting mortgagee to enforce his lien, does not invalidate sale of mortgagor's interest to purchaser, but gives immediate right of possession to mortgagee and postpones rights of purchaser until former's lien is satisfied.

5. CHATTEL MORTGAGES — TYPEWRITTEN CLAUSE GIVING MORTGAGOR RIGHT TO SELL ASSUMED INSERTED FOR SOME PURPOSE AND WOULD BE GIVEN EFFECT THOUGH NULLIFYING PRINTED PROVISIONS.—Typewritten clause in chattel mortgage giving mortgagor right to sell mortgaged property would be assumed to be inserted for some purpose, and if its purpose could be discovered it would be given effect, even though nullifying some printed provisions of mortgage.

6. CHATTEL MORTGAGES — TYPEWRITTEN CLAUSE GIVING MORTGAGORS RIGHT TO SELL CONSTRUED.—Typewritten clause in chattel mortgage providing that if mortgagors sold property, mortgage note should at option of mortgagee become due, and permitting mortgagee to take immediate possession of the property, *held* impliedly to give mortgagors right to sell mortgaged property and to require proceeds of any such sale to be applied on indebtedness, unless a special written consent to contrary was given by mortgagee.

7. CHATTEL MORTGAGES—PURCHASER OF MORTGAGED CATTLE FROM MORTGAGORS HELD TO TAKE GOOD TITLE WITHOUT DUTY AS TO APPLICATION OF PROCEEDS.—Under chattel mortgage of cattle impliedly giving mortgagors right to sell the cattle, subject to condition that proceeds of any such sale be applied on indebtedness unless a special written consent to contrary was given by mortgagee, purchasers from mortgagors not being party to agreement, and condition not being a condition subsequent, took a good title to the cattle without duty of seeing to application of proceeds.

8. EVIDENCE—NOTORIOUS THAT IN CHATTEL MORTGAGES ON CATTLE IN ARIZONA MORTGAGOR IS ALLOWED TO SELL MORTGAGED CATTLE WITHOUT REFERRING SALE TO MORTGAGEE.—It is notorious that it is a very common practice in chattel mortgages on cattle in Arizona to allow mortgagor to sell mortgaged cattle or part thereof without referring proposed sale to mortgagee, latter relying on his trust in personal promise of mortgagor to apply proceeds as agreed on.

See (1) 13 **C. J.**, p. 527. (2) 13 **C. J.**, p. 537. (3) 11 **C. J.**, p. 623. (4) 11 **C. J.**, p. 629 (Anno.). (5) 11 **C. J.**, p. 493. (6) 11 **C. J.**, p. 626 (Anno.). (7) 11 **C. J.**, p. 629 (Anno.). (8) 23 **C. J.**, p. 59.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Ellinwood & Ross and Mr. Maurice Blumenthal, for Appellees.

LOCKWOOD, J.—On July 21st, 1921, John M. Neal and R. C. Brazel mortgaged to Babbitt Bros. Trading Company, a corporation, hereinafter called plaintiff, in addition to certain other property, 165 head of cattle branded $\widehat{\text{M}}$. The mortgage was executed in proper form and recorded the same day in Yavapai county. The cattle were located in that county but the mortgage recited that the mortgagors were residents "of the county of Yavapai and Mohave, state of Arizona." Thereafter John Marley and Roy Butler, hereinafter called defendants, purchased the cattle described from the mortgagors Neal and Brazel, without either the knowledge or consent of plaintiff mortgagee, except as such consent may be implied from the terms of the mortgage itself. The purchase price was paid to the mortgagors, who never accounted for it to plaintiff. Thereafter plaintiff brought suit against defendants for the value of the cattle. The case was tried before the court which rendered judgment for defendants and plaintiff appealed.

The defendants, both by demurrer and answer, raised what is admitted to be the real issue in the case, viz.: That by the insertion of a certain typewritten clause in the mortgage, the plaintiff consented in advance that the mortgagors might sell the cattle free from the mortgage lien. This clause reads as follows:

"It is understood and agreed that all sales of cattle made from the above-named brand are to be applied on the note herein set forth and no uses are to be made of such proceeds without the written consent of the parties of the second part."

The mortgage is on the usual form and also contains, among other things, the following printed clause:

"If the mortgagors shall sell, or assign, the said goods or chattels or any part thereof or any interest therein, . . . then and in any or either of the aforesaid cases all of said note . . . shall at the option of said mortgagee . . . become due and payable and the said mortgagee . . . shall thereupon have the right to take immediate possession of said property and for that purpose may pursue the same wherever it may be found. . . . "

There are two principles of law applicable to the issue in this case, both of which are admitted by counsel to be true, so we cite no authority therefor: First, a contract is to be construed, if possible, so that every part thereof shall be effective; second, if in a contract there appear a printed and a typewritten clause which are irreconcilable the one with the other, the typewritten clause will prevail. It is the contention of defendants that there is an irreconcilable conflict in the two clauses quoted, the printed forbidding, and the typewritten granting, the mortgagors the right to sell the cattle without further permission from the mortgagee, and therefore, under the second principle of law cited above, the sale was with the consent of the mortgagee, and passed title to them. Plaintiff claims, however, that the two clauses can be construed so as to harmonize, and that such construction forbids the sale of the cattle without further consent from it, unless the purchaser sees to an application of the purchase price in accordance with the terms of the typewritten clause. If that be the proper construction, it may, of course, recover from defendants.

When a chattel mortgage is given on property to secure the debt, the natural presumption is that the creditor intends to retain the security he has taken, and therefore the ordinary rule of law is that any

sale made to one who has notice, actual or constructive, of the mortgage, is subject to this lien.   The mortgagor may, however, at any time sell his interest in the property, subject to such lien.

It sometimes happens, though, that the mortgagee, while willing to leave the property with the mortgagor until the debt is due, does not desire third parties to take physical possession thereof, even with the consent of the mortgagor, and therefore it has become customary to provide that if the property is disposed of, the debt immediately becomes due, and the mortgagee may enforce his lien.   Such provisions do not invalidate the sale of the mortgagor's interest to the purchaser, but give immediate right of possession to the mortgagee, and postpones the rights of the purchaser until the former's lien is satisfied.   The mortgage in question contains a provision of the kind referred to, and if it were not for the typewritten clause, there can be no question but that the mortgagee's rights in this suit are superior to those of the defendants.   The decisive question then is: What effect, if any, has the typewritten clause?

We must assume it was inserted for some purpose and, if we can discover that purpose, must give it effect even though it nullifies some printed provision of the mortgage.   The clause, while not in so many words giving anyone a right to sell the cattle, plainly assumes it and is intelligible only on the supposition that the right of sale was given in some form or manner.   If it does not, it is an absurdity, dealing with a condition which could not arise.

There are three ways in which a sale of the cattle might be made: First, by the mortgagee alone; second, by mutual consent of the parties; third, by the mortgagors alone.   Obviously the first method was not contemplated by the clause.   It would be foolish for the parties to stipulate that the proceeds must be used in accordance with the written consent of the

party who received the money. We cannot believe that the mortgagee making the sale and receiving the proceeds agreed to solemnly express his own consent in writing that the money should be applied by him in a certain manner. Did it mean that sales could be made by mutual consent? It would seem unlikely the parties would think it necessary to insert a written stipulation in advance to do a thing which they could always agree to at any time, just as well without the clause in question as with it. Was it intended that the mortgagors could sell without the further consent of the mortgagee? If that was the purpose of the parties, a clause of this nature would indeed be necessary, for in its absence the printed clause would govern, and a sale by the mortgagors would immediately make the whole debt due and payable, and give possession of the property to the mortgagee. Further the express conditions of the clause are only necessary and, indeed, intelligible, if the proceeds of the sale were to be placed primarily in the hands of the mortgagors, a state of affairs which would naturally arise only if they made the sale. We conclude, therefore, that the clause in question impliedly gave the right to the mortgagors to sell the cattle, but that they stipulated the proceeds of any such sale should be applied on the indebtedness unless a special written consent to the contrary was given by the mortgagee. But, it is contended, the condition annexed to the consent was one of which defendants had full notice and they could only take the property free of the lien if those conditions were complied with. It will be observed both were conditions subsequent, and not precedent. They could not come into effect unless there were a sale already made. We have, therefore, this question for solution: When a mortgagor sells mortgaged property with the consent of the mortgagee and, to the knowledge of the purchaser, agrees with mortgagee he will apply the proceeds on the

debt, or do some other thing, does the lien continue unless the purchaser sees to it that the purchase price is applied in accordance with the agreement or the thing done?

We have examined the authorities cited by counsel on this point and are of the opinion that, where the purchaser is a party to the agreement or the condition is a condition precedent, he only takes a clear title when such agreement is carried out. *Brimm* v. *Long*, 22 Kan. 119; *Fields* v. *Jobson Wagon Co. et al.*, 109 Mo. App. 84, 81 S. W. 636; *Dodson* v. *Dedman*, 61 Mo. App. 209; *Eagle Drug Co.* v. *White* (Tex. Civ. App.), 182 S. W. 378; *First Nat. Bank of Tulsa* v. *Hoover* (Tex. Civ. App.), 244 S. W. 1044. But where the purchaser is not a party to the agreement, and the condition is a condition subsequent, he takes a good title without the duty of seeing to the application of the proceeds, or the execution of the agreement. *Woodward* v. *Jewell*, 140 U. S. 247, 35 L. Ed. 478, 11 Sup. Ct. Rep. 784 (see, also, Rose's U. S. Notes); *Rusk Lumber Co.* v. *Meyer* (Tex. Civ. App.), 126 S. W. 317; *Abbeville Live Stock Co.* v. *Walden*, 209 Ala. 315, 96 South. 237; *Lumberman's Nat. Bank* v. *Bush, etc.* (Tex. Civ. App.), 247 S. W. 295; *National City Bank* v. *Adams*, 30 Ga. App. 219, 117 S. E. 285; *New England Mortgage Security Co.* v. *Great Western Elevator Co.*, 6 N. D. 407, 71 N. W. 130.

We think this construction is in harmony both with logic and justice. It is notorious that it is a very common practice in chattel mortgages on cattle in Arizona to allow the mortgagor to sell the mortgaged cattle, or part thereof, without referring the proposed sale to the mortgagee; the latter relying on his trust in the personal promise of the mortgagor to apply the proceeds as agreed upon. To hold that a purchaser is required at his peril to see to the proper

application of the proceeds of a sale under a clause of this kind would be requiring him to distrust the honesty of the very ones whom the mortgagee, by his written contract, had trusted. If a mortgagee wishes to transfer his trust from his lien to the personal promise of the mortgagor and expresses that faith in the mortgage, a third party who has relied on such a situation should not suffer because the mortgagor betrays the trust.

We conclude that the defendants were entitled to judgment, and it matters not whether it was entered on the plea in bar or after the sustaining of a general demurrer.

The judgment is affirmed.

McALISTER, C. J., concurs.

ROSS, J. (Dissenting.)—The printed matter in the mortgage as quoted in prevailing opinion penalizes the mortgagors should they sell any of the mortgaged property. It negatives consent by the mortgagee to mortgagors to sell such property or any of it. If they do such a thing, the due date is hastened and immediate possession of the property may be taken by the mortgagee.

The typewritten clause is not in conflict with such printed matter. It does not authorize or empower the mortgagors to sell any of the property. All it does is to state, in effect, that should any sales of cattle be made "from the above-named brand" the proceeds shall be applied on the note set out in the mortgage and not used in any other way except by written consent of the mortgagee. This provisional clause does, of course, contemplate sales during the life of mortgage, but since it fails to say by whom such sales should be made, it ought to be construed so as to uphold the mortgage and as requiring the consent of both the mortgagors and the mortgagee.

The prevailing opinion omits to state that the mortgage covered several brands of stock cattle, also horses, ranging at large, and the increase of both. We think it is common knowledge that such stock is bought and sold and mortgaged by their brands; that ranges are limited in capacity; and that, to prevent overstocking, sales are necessary; also, that taxes must be paid and maintenance expenses cared for. These are possibly some of the considerations that influenced the insertion of the typewritten clause.

The power to make the sale is not expressly nor impliedly given willy-nilly to the mortgagors. It is to be exercised by both if they agree the necessities exist. This was obviously the reason the typewritten clause was inserted, and if it be given that construction none of the mortgage will be stricken. The other construction strikes from the mortgage all prohibitions against sales by mortgagors. This violates one of the most cardinal rules of construction requiring that effect shall be given if possible to every word and phrase of a contract.

As was said in *Eager* v. *Mathewson,* 27 Nev. 220, 74 Pac. 404:

"It carries the rule of superiority of written over printed matter too far; that is, to the annihilation of the printed matter, when all the parts, the written and the printed, can be reconciled with each other. We do not deny that, when the written and the printed parts of contracts are antagonistic and cannot be reconciled, the written should generally control; but when there is only apparent antagonism, and reconciliation is reasonably easy, we think the rule of reconciliation should govern."

In another case, *Eastern B. & S. Co.* v. *Curtis Bldg. Co.,* 89 Conn. 571, 94 Atl. 921, it is said:

"It is the duty of courts to give effect, if possible, to all of the terms of an agreement. The construction has to be made upon the consideration of the

whole of the instrument, and not upon one or more clauses contained therein. This rule applies as well to instruments partly printed and partly written, as to those wholly printed or wholly written. Where two clauses which are apparently inconsistent may be reconciled by any reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions.''

See, also, 13 C. J. 536, § 498.

The typed and printed clauses of the mortgage as quoted in the prevailing opinion are not inconsistent. Both may be carried out. Sales of cattle may be made during the life of the mortgage, not by the mortgagors, for that is forbidden, but by the mutual consent of the mortgagors and mortgagee. There is no conflict between these clauses unless it be one by implication, and conflicts by implication are not favorites of the law.

It seems to me that it is possible to give effect to all the terms of the mortgage, and that being true our duty is plain.