## BANK OF JEFFERSON v. FIRST NAT. BANK OF MEDFORD.

No. 20431. Opinion Filed June 14, 1932.

Simons, McKnight, Simons & Mitchell, for plaintiff in error.

J. E. Falkenberg and Breeden & Breeden, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Grant county in favor of the defendant in error, plaintiff therein, against the plaintiff in error, defendant therein. The plaintiff hereinafter will be referred to as the bank of Medford and the defendant as the bank of Jefferson.

The action was for money judgment against the bank of Jefferson for its failure to pay a check in the sum of $210.80 drawn to the order of the bank of Medford on the bank of Jefferson by one Paul Nelson. The cause was tried to the court upon the issues made by the petition and the answer. At the conclusion of the evidence the bank of Medford was permitted by the court to amend its petition. The petition alleged a sale "without the knowledge or consent" of the bank of Medford of property mortgaged to the bank of Medford. The amendment permitted was to change the language quoted to read "with the knowledge and consent" of the bank of Medford. That amendment was made over the objection of the bank of Jefferson.

The record shows the following state of facts: Paul Nelson, for a valuable consideration, gave the bank of Medford his promissory note which was secured by a chattel mortgage covering an undivided two-thirds interest in certain wheat growing on lands rented and cultivated by him. He harvested the wheat and sold it to the Hacker Milling Company and received in payment therefor the check of the Hacker Milling Company in the sum of $701.21. That check was drawn on the bank of Jefferson and was payable to Paul Nelson. It was dated July 22, 1927. Upon receipt of the check Nelson indorsed it and delivered it to the bank of Jefferson for deposit to his credit in his checking account in that bank, and the same was credited by that bank to that account. Thereafter Nelson gave numerous checks on the account to various persons, after which he went to the bank of Medford and informed the officers of that bank that he had sold the wheat covered by their mortgage and that he had deposited the proceeds thereof in the bank of Jefferson to his credit. The bank of Medford did not know of the sale of the wheat and did not consent to the sale thereof. That bank had notified the Hacker Milling Company of its mortgage on the wheat. When Nelson informed the bank of Medford of the sale of the wheat, an officer of the bank of Medford wrote out an ordinary bank check on the Nelson account in the bank of Jefferson for the amount due the bank of Medford from Nelson and Nelson signed and delivered it to the bank of Medford. That bank sent that check in the ordinary course through the clearing house to the bank of Jefferson, where it arrived some five days later. When that check was presented to the bank of Jefferson, the bank of Jefferson refused to pay the same and gave as a reason therefor that there were not sufficient funds to the credit of Nelson to pay the same. The check was protested by the bank of Jefferson and returned by it in the regular way to the bank of Medford. The bank of Medford thereupon instituted this action and alleged that the sale of the wheat by Nelson to the Hacker Milling Company was without the knowledge or consent of the bank of Medford; that the proceeds of the sale were deposited in the bank of Jefferson; that the bank of Jefferson well knew that the same was the proceeds of the sale of the wheat covered by the mortgage to the bank of Medford, and that the said money so deposited was a trust fund for the purpose of paying the note of the bank of Medford. It was further alleged therein that the bank of Jefferson appropriated and converted the trust fund to its own use and benefit. The prayer was for judgment in the sum of $210 and interest.

At the conclusion of the evidence of the bank of Medford, the bank of Jefferson demurred thereto on the ground that the same failed to show a cause of action in favor of the bank of Medford and against the bank of Jefferson. The trial court reserved its ruling on the demurrer and the bank of Jefferson offered its evidence. At the con-

clusion of all the evidence, the trial court permitted the amendment to the petition to be made, as hereinbefore stated, and held that the deposit by Nelson in the bank of Jefferson was a trust fund, under the provisions of Senate Bill No. 14, Session Laws of 1927; that the bank of Jefferson had knowledge of the trust at the time the deposit was made by Nelson in that bank, and that it had no right to apply any portion of the fund to the debt of Nelson to the bank of Jefferson, and rendered judgment in favor of the bank of Medford.

Under the statutes of Oklahoma, "bill" means a bill of exchange (section 7665, C. O. S. 1921); a check is a bill of exchange drawn on a bank and payable on demand (section 7855, C. O. S. 1921), and a bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same. Section 7797, C. O. S. 1921. Those statutes, as construed by this court, gave the bank of Medford no cause of action against the bank of Jefferson by reason of the refusal of the bank of Jefferson to accept and pay the check given by Nelson to the bank of Medford. First Nat. Bank v. School District, 31 Okla. 139, 120 P. 614; Ballen & Friedman v. Bank of Kremlin, 37 Okla. 112, 130 P. 539; Hiner v. Washita Valley Bank, 51 Okla. 606, 152 P. 112, and Citizens Bank v. Mabray, 90 Okla. 63, 215 P. 1067. The bank of Medford had no lawful complaint against the bank of Jefferson for charging the account of Nelson with the amount of two notes given by Nelson to the bank of Jefferson. That complaint could be made only by Nelson. For that reason we will not discuss herein the authority of the bank of Jefferson to charge the Nelson account with those amounts.

That a chattel mortgagee has no lien on money received by the mortgagor from an unauthorized sale of mortgaged property is well settled (Oklahoma State Bank v. First Nat. Bank, 142 Okla. 50, 285 P. 117), and the bank of Medford does not contend that the lien follows the proceeds. In its brief its says, "Plaintiff bank does not contend that the lien follows the proceeds." Whether or not the bank of Medford consented to the sale, that bank had no lien on the proceeds of the sale deposited in the bank of Jefferson in the checking account of Nelson.

The bank of Medford so considered the law, and, doubtless for that reason, it amended its petition with the evident purpose of bringing itself within the provisions of Senate Bill No. 14, chapter 4, sec. 1, Session Laws of 1927.

It will be noted that that act applies to sales of mortgaged property "with the consent of the mortgagee," while the mortgage remains in force and unsatisfied, and that it has no application where the sale of the mortgaged property is without the consent of the mortgagee. Both the body of the act and the title thereto so limit the effect thereof. The record in this case shows that the bank of Medford did not consent to the sale of the mortgaged property. The bank of Medford admits "that the sale was not with the consent of plaintiff bank and part of the evidence of N. K. Kilmer and Paul Nelson is set out to show that plaintiff bank was not consulted about the sale until a couple of hours after the check was given for the wheat." It contends that it "had given written notice to the Hacker Milling Company that it held the first mortgage, and within two hours after the check was given, Nelson reported his action to plaintiff bank, it approved his action, accepted a check for the amount due on the mortgaged debt, and called the Hacker Milling Company and released the wheat in its hands. We contend that the actions and conduct of the parties conclusively prove that the sale was with the consent of the bank." That contention cannot be sustained. There was no "consent" to the sale of the wheat by Nelson. The bank merely approved the sale of the wheat that had been made by Nelson. This court is not authorized to legislate. The Legislature has provided that the mortgagor "shall be deemed and conclusively held to be the trustee of the funds received upon the sale thereof, for the benefit of such mortgagee, or assignee, to the extent of the indebtedness secured thereby or any balance due thereof" when the sale of the mortgaged personal property was with the consent of the mortgagee. It has not made the mortgagor a trustee of the funds received by him upon the sale of the mortgaged property where the mortgagee has not consented to the sale of the mortgaged property and has approved the sale after it was made without the consent of the mortgagee. To give the act the construction contended for by the bank of Medford would be to require this court to read into it something that the Legislature did not include therein.

The record in this case shows that, prior to the time that the bank of Medford approved the sale of the mortgaged property that had been made without its consent by

Nelson, 'the' funds received upon the sale thereof had passed from the hands of the mortgagor and had been deposited in the bank of Jefferson to the checking account of Nelson. At the time the check of the Hacker Milling Company, payable to Nelson, was deposited by Nelson in the bank of Jefferson, Nelson was not the trustee of the funds received from the sale of the mortgaged property and there was no deposit in the bank of Jefferson of trust funds. The deposit was an ordinary one and was made in the regular course of business. There was thereby created the relationship of debtor and creditor between the bank of Jefferson and Nelson. The subsequent approval of the sale of the mortgaged property by the bank of Medford did not operate to make Nelson the trustee of the funds he received from the sale of the mortgaged property and could not so operate, for he did not have those funds in his possession. The title thereto had passed to the bank of Jefferson and the bank of Jefferson was a mere debtor of Nelson. There is nothing in the act in question that is applicable to the facts shown by the record in this case.

It cannot be said that the bank of Jefferson received the proceeds of the sale of the mortgaged property with notice that the mortgagor held those funds as trustee, for the mortgagor did not hold those funds as trustee at the time he deposited them in the bank of Jefferson. For that reason the decisions relied upon by the bank of Medford and the text cited by it have no application. They relate to trust property received from a trustee in violation of the trust.

Under the facts shown by the record in this case, Senate Bill No. 14, supra, has no application, and the trial court was in error in holding it applicable and in rendering judgment for the Bank of Medford against the bank of Jefferson.

For that reason, the judgment of the trial court is reversed and the cause is remanded to the district court of Grant county, Okla., with directions to enter a judgment sustaining the demurrer of the bank of Jefferson to the evidence of the bank of Medford.

RILEY, HEFNER, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., dissents. SWINDALL, J., disqualified. LESTER, C. J., and CLARK, V. C. J., absent.