## ILLINOIS POWDER MFG. CO. v. SECURITY BANK & TRUST CO. et al.

No. 25833. Oct. 22, 1935.

E. C. Fitzgerald and McReynolds & Blair, for plaintiff in error.

Frank Nesbitt, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court.

The Covert Mining Company, a corporation, being engaged in the mining business in Ottawa county, Okla., received permission from the State Industrial Commission to carry its own insurance and had a written contract with one E. C. L. Viers, Doctors Connell and Russell, and the Picher Hospital of Picher, Okla., under which contract said Covert Mining Company created a special workmen's compensation fund, which was on deposit with the defendant Security Bank & Trust Company of Miami, Okla., which fund was used solely for compensating employees who might be injured while in the employment of the Covert Mining Company, and which contract provided that no check or draft would be honored by said Security Bank & Trust Company when drawn on, or by the Covert Mining Company, unless such check or draft was countersigned by the said Viers. Said contract contained the following provision:

"To Furnish Service. E. C. L. Viers is to furnish all Claim Service, Inspection Service, etc., except Legal, in the same manner as would ordinarily be furnished by any insurance company carrying the risk under a Standard Workmen's Compensation and Employer's Liability Policy, in so far as it refers to services to be rendered. No obligations as to liability, indemnity, defense, legal, or medical costs are assumed by him. He will be permitted to issue and countersign all checks or drafts, drawn on this fund, necessary to pay compensation due the injured employees of the Party of the First Part and such other item as may be necessary to handle this work. No checks or drafts, drawn on this fund, shall be honored or paid unless such checks or drafts be signed by a designated and authorized officer or member of First Party's firm and countersigned by E. C. L. Viers."

Drs. Connell and Russell and the Picher Hospital were to furnish all medical and hospital care, together with medicine and appurtenances as required by the Workmen's Compensation Law, not to exceed 60 days following an accident, and the Picher Hospital was to furnish hospital facilities.

Having decided to discontinue mining operations, the Covert Mining Company, on April 12, 1933, caused a certain check for the balance on hand in said special fund, in the sum of $1,023.08, in the defendant Security Bank & Trust Company, to be written payable to itself, and said check was indorsed payable to the plaintiff herein and was delivered to the said Viers, who took said check with him and stated that before he could countersign it, it would be necessary that he first ascertain that there were no workmen's compensation claims against said fund; that he possibly would have to get the consent of the State Industrial Commission before the check could be countersigned and delivered.

On April 15, 1933, a Mr. Britt, representing the Illinois Powder Manufacturing Company, called on the said Viers and received said $1,023.08 check, said check in the meantime having been countersigned by said Viers, and said check was sent to St. Louis, where it was deposited in the bank for collection, and in due course was presented to the defendant Security Bank & Trust Company, of Miami, Okla., April 19, or 20, 1933, for payment, and payment was refused because about 9 o'clock a. m., April 13, 1933, the defendant Cox Machinery Company had caused a garnishment summons to be served on the defendant bank, levying on the funds of the Covert Mining Company. About 1:20 p. m., April 13, the defendant Cunningham Oil Company caused a garnishment summons to be served on the defendant bank, levying on the funds of the Covert Mining Company. At the time these two garnishments were served on the defendant bank, levying on these funds, the said Viers still had in his possession the $1,023.08 check, said check not having been delivered to the plaintiff until April 14, 1933.

This action was to determine who had prior claims and liens on said fund in the defendant bank. The defendant bank tendered said fund into court.

The trial court held the garnishment of the Cox Machinery Company created a first lien, because its garnishment was first served, and that the Cunningham Oil Company had a second lien, because its garnishment was served second, and that the plaintiff herein had a third lien for the residue of said fund.

The plaintiff submits this cause to the court on these two propositions:

First. That the transaction disclosed by the testimony constituted an equitable as-

signment of a special fund, good as between the parties.

Second. That if the transaction disclosed by the testimony constituted an equitable assignment of the special fund, good as between the parties, that as between the plaintiff and the assignee it would be good as against garnishing creditors, for the reason that they take no greater rights than the assignor had.

The case of Walters National Bank v. Bantock, 41 Okla. 153, 137 P. 717, relied on by the plaintiff, is not in point, for the reason that in that case the bank took Bantock's check with the specific understanding that it would be used, honored, and applied on the purchase price of the land, and the banker even wrote in the check the words, "In escrow."

5 C. J. 907, lays down the following rule with reference to assignments:

"Where the assignment is by a written instrument, simply signing or acknowledging the instrument is not sufficient to transfer the property, and delivery of the instrument is necessary to complete the assignment. So, the mere indorsement of a transfer on an instrument, without proof of delivery, will not be sufficient to establish the assignment thereof. The reason is that the instrument must be made operative as in the case of any other contract."

Speaking further upon this question, at page 909, the author lays down the following rule:

"In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the debt or fund or subject-matter; if this is done the transaction is an assignment; otherwise not."

And at page 912, lays down the following rule:

"Relinquishment of Control. The assignor of a chose in action must part with the power of control over the thing assigned; if he retains control it is fatal to the claim of the assignee. A mere direction by a party to his agent to apply certain funds to the payment of a debt does not operate as an equitable assignment of such fund, because such direction, until acted upon, may be revoked. There must be some character of delivery, actual or symbolic, or some act to place the fund beyond the control of the assignor."

The United States Supreme Court, in the case of Christmas v. Russell, 20 L. Ed. 762, speaking on this subject, states in the body of the opinion:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he does, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor."

In the case of Day v. Charlton, 61 Okla. 130, 160 P. 606, this court said:

"An order or request in writing upon a third person to deliver to the maker thereof, for his indorsement, certain checks, thereafter to be drawn against an accruing fund of the maker in the hand of another, such check, after receiving such indorsement to be delivered by another third person to the beneficiary of such order or request does not operate as an equitable assignment of the fund against which such checks are to be drawn; the maker of the order or request not having relinquished full control over such fund."

And in the body of the opinion the court said:

"In order to operate even as an equitable assignment, a written instrument of such a nature must make an absolute appropriation of the fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the fund to the exclusion of all control by the assignor over the fund. The transfer must be of such a character that the fundholder can, not only safely pay, but is compellable to do so, though he may be forbidden by the assignor."

The case of Tucker v. Ware, 169 Okla. 401, 37 P. (2d) 623, cited by the plaintiff, is not in point for the reason there was an unquestionable delivery of the assignment of the chose in action by the assignor, Nancy Ware.

2 R. C. L. 621, lays down the following rule:

"Where, however, no order is given, and the fund is not to pass until a future day, the matter resting for the time being in agreement, or where the party retains the subject under his own control by giving the order, not to the assignee, but to his own

agent, the transaction does not give rise to an equitable assignment or a present transfer of the fund."

In the case of Ford v. Angelrodt, 37 Mo. 50, 88 Am. Dec. 174, Justice Lovelace quotes with approval Lord Chancellor Truro, in Haddock v. Gaundell (15 Eng. L. & Eq. 30):

"'An agreement between a debtor and a creditor that the debt owing should be paid out of a specific fund coming to the debtor, or an order given by a debtor to his creditor upon a person owing money or holding funds belonging to the giver of the order, directing such person to pay such funds to the creditor, will create a valid equitable charge upon such fund; in other words, will operate as an equitable assignment of the debt or fund to which the order refers.' 'But,' says the same learned Judge, 'If there be anything from which a different intention ought to be inferred, as where the fund is to pass at a future day, the matter resting for the time being in agreement, or where the party retains the subject under his own control by giving the order, not to the assignee but to his own agent, the transaction is not allowed to have the effect of a present transfer.'"

The rule in this state seems to be clear that the execution and delivery of a check, drawn against the account of the drawer in a given bank, does not operate as an assignment pro tanto of such fund in the bank to the payee thereof, unless and until the check is delivered to the bank or accepted by it, and this rule is sustained by the following cases:

First National Bank of Durant v. School District No. 4, Bryan County, 31 Okla. 139, 120 P. 614, in which this court said:

"A draft drawn in the ordinary form does not constitute an equitable assignment pro tanto of funds in the hands of the drawee to the credit of the drawer before such draft has been accepted or presented for payment."

And in the case of Bank of Jefferson v. First National Bank of Medford, 158 Okla. 37, 12 P. (2d) 540, this court said:

"Under the statutes of Oklahoma, a check on a bank of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the check unless and until it accepts the same."

And in the body of the opinion, the court says:

"A check is a bill of exchange drawn on a bank and payable on demand (section 7855, C. O. S. 1921), and a bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

Since the check in question was neither countersigned nor finally and unconditionally delivered to the payee, prior to garnishment, and in view of the further fact that it was neither presented to nor accepted by the drawee bank, prior to the serving of the garnishment summons upon said bank, it follows that said fund was subjected to the jurisdiction of the court by garnishment proceedings.

This was purely an equitable case, and the trial court found against the plaintiff, and the rule is well recognized that where a case is of purely equitable cognizance, this court has on appeal the power to go into and review the record and weigh the evidence, but if the judgment of the trial court is not clearly against the weight of the evidence, it will not be disturbed.

We think the findings of the trial court are amply sustained by the evidence, and that the judgment should be, and is, affirmed.

The Supreme Court acknowledges the aid of Attorneys Waldo T. Oden, W. C. Austin, and Ross Rutherford in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Oden, and approved by Mr. Austin and Mr. Rutherford, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J. OSBORN, V. C, J., and BAYLESS, WELCH, and CORN, JJ., concur.