**Robert HAAF and First American National Bank, a banking corporation, Plaintiffs and Appellants,**

**v.**

**Walter R. HJELLE, North Dakota State Highway Commissioner, Tri-State Insurance Company, Williston Insurance Agency, North Dakota Concrete Products, Inc., John E. Davis, d/b/a Goodrich Lumber Company, Tractor & Equipment Company, Mid-Continent Construction Company, Road Machinery & Supplies of Fargo, Inc., Dunn County, a municipal corporation, North Dakota Workmen's Compensation Bureau, The Firestone Tire & Rubber Company, and Farmers Union Oil of Denhoff, North Dakota, Defendants and Respondents.**

**No. 8133.**

Supreme Court of North Dakota.

Aug. 20, 1964.

Vogel, Ulmer & Bair, Mandan, for appellants.

McGee, Van Sickle & Hankla, Minot, for respondent Tri-State Ins. Co.

ERICKSTAD, Judge.

The plaintiffs appeal from that part of a judgment of the District Court of

Burleigh County which awarded the defendant Tri-State Insurance Company the balance of certain funds deposited with the court.

Previously the funds had been retained by the North Dakota State Highway Department in connection with two highway construction contracts awarded Coghlan Construction Company, Inc., pending the performance of the contracts by the defendant Tri-State Insurance Company, as surety on the contract bonds, as a result of default in the performance of the contracts by the construction company.

Plaintiffs contend that they are entitled to $50,000.00 of the aforesaid funds because of loans to the construction company and an assignment by the construction company, to which the defendant insurance company, as surety, had allegedly consented, of $50,000.00 of funds due or to become due

the construction company on the highway contracts.

Defendant bonding company, having been forced to spend in excess of this amount to complete the contracts, contends it is entitled, under the equitable doctrine of subrogation, to the unpaid funds deposited with the court.

Facts pertinent to this appeal indicate that Coghlan Construction Company, Inc., was the successful bidder on two North Dakota highway construction projects for grading and graveling highways in Adams, Sheridan, and Burleigh Counties. The two contracts for these projects were entered into on September 29, 1959. Bonds for these contracts were supplied by the defendant Tri-State Insurance Company, Inc.. On August 24, 1960, the construction company filled in and signed the top portion of an assignment of earnings form, to read as follows:

## "ASSIGNMENT OF EARNINGS

"For value received, the undersigned does hereby assign to __First American National Bank__ of __St. Cloud, Minnesota__ the sum of $ __50,000.00__ , now due or to become due from the State of North Dakota on a contract with the State Highway Department subject to acceptance by the State Highway Department, and does hereby waive any and all claims against the State or the Department, by reason of failure to comply with the terms hereof or refusal to accept this assignment.

"Dated at __Williston, North Dakota__ this __24__ day of __August 1960__ .

"(Signed) __Coghlan Const. Co. Inc.__
Assignor

"(Signed) __James M. Coghlan__ "

On the same date Gerald A. Stenehjem, the resident agent of the defendant bonding company, signed the lower left portion of this form as follows:

"Consent of Surety:

Tri-State Insurance Company
Box 1332—Williston, N. D.

By: (Signed) Gerald A. Stenehjem
    North Dakota Resident Agent
Williston Insurance Agency"

This form was not delivered at this time to the bank but was placed in the files of the construction company, where it remained until July, 1961.

Both the Highway Department and the defendant bonding company received notice on September 20, 1960, that the construction company had not paid certain labor and material bills; and, as a result thereof, the defendant bonding company began completion of the highway projects. It also began payment of the construction com-

pany's labor and material bills which arose out of the two projects.

On October 10, 1960, the construction company filed notice of its default with the Highway Department; and on October 24, 1960 the construction company executed an assignment to the bonding company of all funds due or to become due on the projects. By November 17, 1960, the bonding company had completed the projects and published notices of completion.

The assignment of earnings form executed by the construction company was delivered by its president to the plaintiff First American National Bank in July, 1961. On July 7, 1961, the bank filled in and signed the middle portion of the form so that it read as follows:

"This assignment is hereby accepted subject to all the terms and conditions thereof.

"Dated at __St. Cloud, Minnesota__ this _7th_ day of __July__ 1961 .

"FIRST AMERICAN NATIONAL BANK
Assignee
(Signed) B. R. Meinz
St. Cloud, Minn. "

This instrument was delivered to the Highway Department on July 10, 1961; and, although it was placed in the Department's files, it was not accepted or approved by the Department.

Facts concerning the loans are as follows: Robert Haaf and the construction company, by its president, co-signed a $40,000.00 note to the bank on December 30, 1959. On the same date the construction company gave Robert Haaf a note for $12,500.00, payable on demand. The sum of $7,500.00 was paid on the note to the bank. An additional loan of $5,000.00 was made by the bank to the construction company on January 25, 1960. On November 25, 1960, Robert Haaf executed a new note to the bank for $37,500.00 to cover the balance of the indebtedness on the first note. This latter note was signed by the construction company as guarantor.

It is conceded that the general rule is that a surety for a construction contractor who is compelled to complete the contract on default of the contractor is entitled to assert the equitable doctrine of subrogation to any unpaid funds held by the State or owner of the contract as against the claim of a bank or any person to the fund on the basis of an assignment. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Farmers' Bank v. Hayes, 58 F.2d 34 (6th Cir., 1932); Scarsdale Nat'l Bank & Trust Co. v. U. S. Fidelity & Guaranty Co., 264 N.Y. 159, 190 N.E. 330; Board of County Commissioners v. Southern Surety Co., 216 Mich. 528, 185 N.W. 755; Barrett Bros. Co. v. St. Louis County, 165 Minn. 158, 206 N.W. 49.

In the instant case the bank asserts that, although that may be the general rule, it does not prevail where the surety company consents to the assignment. To support this contention, it quotes Seaboard Surety Co. v. First Nat'l Bank & Trust Co., 121 F.2d 288 (8th Cir., 1941):

"We hold that, absent the consent instrument, the equity of the surety would be superior; but that the effect of the consent instrument is to make the equity of the bank superior. * * *"

Assuming, without deciding, that the resident agent of the bonding company had authority to bind the bonding company, there are many facts which distinguish this case from Seaboard. In Seaboard the bank refused to lend the money until an assignment consented to by the surety company was delivered to it. In the instant case the loans were made without knowledge of or reliance on the assignment or consent thereto. Delivery to an acceptance by the bank of the assignment occurred after the surety company had accepted an assignment from the construction company; and the construction company, in completing the contracts, had expended funds greatly in excess of the funds retained by the Highway Department.

■ It is clear that an assignment does not become effective until delivery to the assignee. Illinois Powder Mfg. Co. v. Security Bank & Trust Co., 174 Okl. 293, 50 P.2d 411; Maney v. Cherry, 170 Okl. 469, 41 P.2d 82; Hull v. Hull, 172 App.Div. 287, 158 N.Y.S. 743; In re Barrows' Estate, 103 Vt. 501, 156 A. 408.

■ Although consent of the bonding company may have served as a waiver of its original superior equity relating back to the making of the surety bond, it did not serve to accelerate the effective date of that assignment. As the assignment consented to was delivered to and accepted by the bank subsequent to the delivery to and acceptance by the bonding company of the other assignment, the assignment to the bonding company is superior. The bonding company, in completing the contracts, has expended funds greatly in excess of the retained funds; consequently, there are no funds to which the assignment to the bank may apply.

The judgment of the district court is affirmed.

MORRIS, C. J., and STRUTZ, BURKE and TEIGEN, JJ., concur.