[No. 6825.]

## ZIEGLER ET AL. V. ILFELD.

1. CHATTEL MORTGAGE—*Waiver of Mortgagee's Lien*—If mortgagee consent that the mortgagor may sell the mortgaged chattels, he will not be allowed to afterwards set up the mortgage as against the purchaser—(278, 279).

2. —*Authority of Mortgagee to Sell*, may be inferred from circumstances. Direct evidence is not required. The question depends on the intent of the parties, and is for the jury—(278).

3. EVIDENCE—*Relevancy*—Plaintiff sued for the value of lambs upon which he held a chattel mortgage. Defendants claimed under a purchase from one, to whom, as they asserted, the mortgagor had sold them, by express consent of plaintiff. Evidence that shortly after purchase the purchaser remitted to plaintiff a check for credit of the mortgagor, what disposition he made of the check, and when he was first informed that the check was given on account of such purchase, was held relevant to the contention of defendant—(278, 279).

4. CONVERSION—*Mortgaged Chattels—Measure of Damages*—Mortgagee suing for the conversion of the mortgage of chattels recovers only what is due him of the mortgage debt—(279, 280).

*Error to Larimer County District Court.*—HON. HARRY P. GAMBLE, Judge.

MR. JOHN T. BOTTOM, for plaintiff in error.

MESSRS. HODGES & WILSON, for defendant in error.

MR. JUSTICE GABBERT delivered the opinion of the court:

Defendant in error, plaintiff below, brought suit against plaintiffs in error, as defendants, to recover the value of lambs which plaintiff claimed to own, and which he alleged the defendants had wrongfully converted to their use. The basis of his claim was, that he held a chattel mortgage on the lambs in question, given him by Mateo Lujan and wife, in the Territory of New Mexico.

This case was previously considered in *Ilfeld v. Ziegler,* 40 Colo. 401, on appeal from a verdict and judgment in favor of defendants. In considering that appeal, we held that the trial court erred in permitting the defendants to introduce evidence tending to establish that plaintiff, as mortgagee, had authorized the mortgagors to sell the mortgaged property, for the reason that such defense was not tendered by the answer. The judgment of the trial court was reversed and the cause remanded for a new trial, with leave to the parties to amend their pleadings. Pursuant to the leave thus granted, defendants amended their answer so as to present the issue of authority granted by plaintiff to the mortgagors to sell the mortgaged property and account to him for the proceeds. A re-trial with this issue in the case was had, and a verdict and judgment rendered for the plaintiff, which the defendants have brought here for review on error.

For the purposes of the trial, it was admitted that the property was not purchased from Lujan by the defendants, but that they made their purchase from one Serapio Romero. It appears from the evidence that the latter had entered into an arrangement with the defendants through Watson Ziegler, a member of the defendant firm, to sell and deliver them, at certain railroad points in New Mexico, several thousand lambs at an agreed price of $1.65 a head. Romero appears to have purchased the lambs in question from Lujan, and turned them over to the defendants, who paid Romero the price agreed upon. Plaintiff had a chattel mortgage on this property.

The lambs were driven from the Lujan ranch to Clayton. Serapio Romero gave Miguel Romero, on account of the Lujan lambs, his check for $3,500, which was afterwards sent to the plaintiff by Miguel, with other checks given him by Serapio, to be sent to plaintiff on ac-

count of sheep which he had purchased from other parties, and turned over to the defendants, and upon which the plaintiff also held chattel mortgages. The $3,500 check was dishonored. These transactions occurred in November, 1900. At the trial the manager of the business of plaintiff was asked by counsel for defendants the following questions, to which objections were interposed, and sustained:

"Q. I will ask you if some time in the month of November, 1900, you received what purported to be a remittance to be credited upon the note secured by mortgage given by Mateo Lujan and Ambrosia V. Lujan, his wife, under date of December 7, 1899?"

"Q. When you ascertained that property that was mortgaged to Charles Ilfeld had been disposed of, and that that check represented the price or proceeds of mortgaged property that had been sold by Lujan, what steps did you take with reference to that matter, and when, and how?"

"Q. When did you learn that this check had been given as the purchase price of lambs that had been sold that were covered by this mortgage, to which we have referred?"

"Q. Did you present this check to the bank upon which it was drawn, or send it through some other bank? (Referring to the $3,500 check of Serapio Romero.)"

The court instructed the jury to the effect that defendants had not introduced any testimony to establish their defense that plaintiff had authorized Lujan to sell the lambs and remit the proceeds of the sales to him. Error is assigned on this instruction, and the ruling of the court in sustaining an objection to the questions above referred to.

From the record it appears that these rulings were based upon the ground that the issue of ratification by plaintiff of the act of the mortgagors in selling was not in the case. Our attention has not been directed to any testimony tending to prove that Lujan, in selling to Romero, professed to act as the agent of plaintiff. In this respect the case is the same as when here before, when we held that where a mortgagor, · in selling mortgaged chattels, did not avowedly act as the agent of the mortgagee, but in his own right, as owner, the mortgagee would not be bound thereby on the theory of a ratification of an unauthorized act of his agent.

There was, however, another important question in the case which defendants were entitled to have submitted to the jury, and which the rulings under consideration deprived them of, namely, whether, if plaintiff had given Lujan permission or authority to sell the lambs and account to him for the proceeds, could he maintain the action by virtue of his mortgage? A purchaser of mortgaged chattels may show that the sale was made by the mortgagor with the consent of the mortgagee. If such consent is shown, the mortgagee is barred of his right to set up his mortgage against the title of the purchaser.—Jones on Chattel Mortgages, sections 465, 486; *Stafford v. Whitcomb,* 90 Mass. 518; *Flenniken v. Scruggs,* 15 S. C. 88.

Authority given the mortgagor of chattels by the mortgagee to sell the mortgaged property and account to the mortgagee for the proceeds of the sale may be inferred. Such authority depends upon the intent of the parties and is a question of fact for the jury.—*Jones on Chattel Mortgages,* section 457.

The fact that Serapio Romero arranged to send plaintiff a check for $3,500 out of the proceeds of the

sale of the Lujan lambs, which check was sent and was. within $130 of the whole amount received for the lambs, would tend to prove that Lujan was making the sale pursuant to an understanding with plaintiff, that he could dispose of the property and account to him for the proceeds. The testimony excluded to which we have referred would also have tended to throw light on the transaction on this subject; so that it is apparent the court not only erred in the instruction given, but excluded testimony which would have tended to prove the important issue in the case to which we have referred. These errors were emphasized from the fact that the court further instructed, the effect of which was to advise that the only issue, outside of the question of value, was whether defendants ever came into possession of the lambs, or exercised such dominion or control over them as would make the defendants legally liable for their conversion. Under the pleadings this was an issue, but should it have been found by the jury that Lujan had been authorized by the plaintiff to sell the mortgaged property, it would have been eliminated, for that would have been an end of the case.

Error is also assigned upon the refusal of the court to permit defendants to show that at the time of the trial there was not due the plaintiff on account of the indebtedness secured by the mortgage, as much as the value of the lambs in question. Our attention is not called to anything in the record upon which this assignment is based. Counsel for plaintiff say there is not. If, however, it be true that the court ruled as claimed, and the issue on the question of the amount of indebtedness secured by the chattel mortgage is made by the pleadings, the ruling was error. Plaintiff could not recover judgment for the value of the lambs beyond the amount actually due or to be-

come due him on the indebtedness secured by his mortgage when judgment was rendered.—*Wood v. Weimer*, 104 U. S. 786.

The evidence was to the effect that the number of lambs which defendants received was 2,200 all of which were covered by the Lujan mortgage. The jury returned a verdict for 1,298 head, at $1.65 per head. Counsel for plaintiff have assigned cross-errors on the action of the trial court in failing to instruct the jury as requested, or sustain a motion to modify the verdict, so as to include 2,200 lambs at $1.65 per head. We do not deem it necessary to enter into a discussion of the testimony bearing on the subject of the number of lambs received by defendants which were embraced in the Lujan mortgage, or the law on the subject of conversion. For the errors assigned to which attention is directed, the judgment must be reversed and the cause remanded for a new trial, when, if the case is properly submitted to a jury, the errors embraced in the cross-errors assigned need not necessarily occur again.

As the case has already been here twice and must be tried again, we deem it appropriate to suggest that much testimony has been introduced at the previous trials which tends to obscure the meritorious questions involved. The fact that a number of interrogatories were submitted to the jury must also have tended to confuse them in deliberating on the case. From the record before us it is immaterial whether defendants bought direct from Lujan or Romero. It appears reasonably certain that the lambs finally came into their possession and under their control, and that they were mortgaged to plaintiff. The only issue going to the merits of the case about which there can be any serious controversy, is whether Lujan was authorized by plaintiff to sell the lambs and account

to him for the proceeds. At another trial, under the issues made by the pleadings, any testimony competent, *pro* and *con,* on this subject, should be admitted, and the question squarely submitted to the jury by an appropriate instruction. If the finding on this issue should be for defendants, the verdict should be in their favor. If for plaintiff, then, so far as advised from the present record, the verdict should be in his favor for the value of the 2,200 lambs, not exceeding the amount of the mortgage indebtedness, less any sums paid thereon, if that question, by the pleadings and evidence, is in the case.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

Decided December 2, A. D. 1911. Rehearing denied April 1, 1912.