## OKLAHOMA STATE BANK OF DAVIS v. FIRST NAT. BANK OF MUSKOGEE et al.

No. 18856. Opinion Filed Jan. 28, 1930.

Rehearing Denied March 4, 1930.

A. E. Pearson, Hal Houston, and Warren H. Edwards, for plaintiff in error.

Charles P. Gotwals and John T. Gibson, for defendant in error First National Bank of Muskogee.

J. F. McKeel, for defendant in error First State Bank of Vanoss.

JEFFREY, C. The Oklahoma State Bank of Davis, as plaintiff, began this action in the district court of Muskogee county, Okla., against the First National Bank of Muskogee and the First State Bank of Vanoss, as defendants, for an accounting of certain funds alleged to have been received by the defendant from the sale of certain mortgaged chattels. Plaintiff alleged that on April 26, 1921, one James Hastings executed and delivered to M. R. Chilcutt three promissory notes, one for $3,000, one for 2,000 and one for $2,416.65; and that said notes were secured by a chattel mortgage on 172 steers located in Union county, N. M. The first note above described was by Chilcutt indorsed and sold to plaintiff, the second was sold to the defendant First State Bank of Vanoss, and the third to defendant the First National Bank of Muskogee; but that the mortgage securing said notes, while duly filed for record in Union county, N. M., was not assigned to the assignees of the notes or any of them. It is then alleged that the said Hastings thereafter sold the steers, covered by the mortgage, to three separate purchasers and took promissory notes, secured by chattel mortgages, direct to M. R. Chilcutt, who, in turn, indorsed and delivered them to the defendants as security for other obligations. The petition further alleges that thereafter, the parties who purchased the steers from Hastings paid their notes to M. R. Chilcutt, and that he, in turn, de-

livered such payments to the two defendant banks in satisfaction of the Hastings notes, or the notes which had been given in the place of the Hastings notes; but that no part of the proceeds from the sale of the steers was ever paid to plaintiff. Plaintiff alleges that it is entitled to its pro rata part of the proceeds received by the defendants from the sale of the steers, and prayed that defendants be required to account for the moneys so received, and for a judgment for its pro rata part of such proceeds so received. The defendants denied plaintiff's allegations. Upon the trial, a jury was impaneled to make findings on issues of fact, but the court sustained defendants' demurrers to plaintiff's evidence, and rendered judgment for the defendants. Plaintiff has appealed, and the defendant First State Bank of Vanoss has filed a cross-petition in error challenging the correctness of certain orders made on the pleadings and process prior to the trial.

The defendants have incorporated in their separate briefs motions to dismiss plaintiff's appeal for failure to comply with Rule No. 26 of this court in the preparation of its brief. From an examination of the brief, we are of the opinion that the same substantially, although not strictly, complies with said rule, and the motion to dismiss is overruled.

As we understand plaintiff's contention, it is that both plaintiff and defendants had an interest in the common chattel mortgage given to secure all of the notes held by them; that they were each entitled to a pro rata part of the security, or the proceeds from the sale thereof; and that when the two defendants received the proceeds from the sale of the steers, they held the same as trustees for all of the holders of the notes, secured by the common chattel mortgage, and are required to account for plaintiff's proportionate part thereof. A part of the foregoing proposition appears to be sound, but we cannot subscribe to the proposition as a whole, as applied to this case.

Plaintiff's evidence is to the effect that M. R. Chilcutt sold 172 steers to James Hastings, and received therefor the three promissory notes, secured by a chattel mortgage on the steers. The notes were then assigned, one to each of the parties to this action. Thereafter, Hasting, apparently without the knowledge or consent of any of the holders of the notes, sold a part of the steers to J. R. Williams, a part to C. D. Wiggins, and the balance to one Garrison. The sale price for all of them, less a few which had died, was less than the amount of plaintiff's and defendants' notes. The new purchasers each executed a note, payable to M. R. Chilcutt, for the amount of the purchase price, and gave a mortgage on the steers to secure the payment of the notes. These transactions were all had with Hastings and Chilcutt's brother in New Mexico. The new notes and mortgages were fowarded to M. R. Chilcutt, and he indorsed them over to the two defendant banks. The evidence further shows that M. R. Chilcutt was indebted to the First National Bank of Muskogee in the approximate sum of $35,000; that Williams and Wiggins paid their notes to M. R. Chilcutt, and Garrison paid a part of the purchase price of about 100 head of steers, which included a few head of the Hastings' steers. M. R. Chilcutt turned over to the two defendant banks all the money received from these parties to be credited upon his indebtedness. The proof further discloses that M. R. Chilcutt, at some time after plaintiff and defendants received the notes in question, borrowed of the Muskogee bank about $6,200 on other cattle owned by him, and applied this on notes which he had received from purchasers of cattle in New Mexico and indorsed to said bank. The evidence is in a hopeless state of confusion, and we are unable to determine whether the proceeds received by M. R. Chilcutt from the second sale of the steers was applied on the Hastings notes, or notes given in renewal thereof, or upon other indebtedness owing by M. R. Chilcutt to the banks. The notes and renewal notes held by the defendants were paid in some manner, and all of the proceeds from the second sale of the steers were turned over to the defendant banks, but does not appear to be in excess of the two notes held by them. The evidence indicates, although not entirely satisfactory, that at least a part of the proceeds from the second sale of the steers was applied in payment of the Hastings note, held by the First State Bank of Vanoss, or in payment of a note which had been given in the place of the Hastings note. It also appears that a few head of the Hastings cattle were shipped to the Kansas City market by some one purporting to represent the First National Bank of Muskogee, and probably the proceeds from those steers received by said bank.

It will readily be seen that, in order to sustain plaintiff's contention, we must hold, in effect, that his mortgage lien attached to the proceeds from the sale of the mortgaged chattels, and the law is well settled that the mortgage lien does not follow the proceeds in such a case. Jones on Chattel Mortgages

(5th. Ed.) section 464; Burnett v. Gustafson, 54. Iowa, 86, 37 Am. Rep. 190; Estes v. McKinney et al. (Tex. Civ. App.) 43 S. W. 556; Maier v. Freeman, 112 Cal. 8, 44 Pac. 357. It appears from a number of authorities examined that if the holder of one or more of a series of notes, secured by a common chattel mortgage, obtains possession of the security, he must hold it in trust for all other holders of the series. And if such a holder sells the security, he is accountable to the holders of the other notes so secured for their pro rata part of the proceeds of the sale. But these are not the facts in the case at bar. There is no proof that either of the defendants had anything to do with the sale of the mortgaged steers, or knew from what source the proceeds were derived when received by them, unless it be in the case of about ten head of steers, which were shipped to Kansas City, and which will be dealt with hereinafter. Under this state of facts, it would be necessary to impress the proceeds of the sale or the second sale with a mortgage lien in order to proceed against them. This apparently has never been done in any jurisdiction, although it appears that the cases of Cone v. Ivinson, 4 Wyo. 203, 33 Pac. 31, and Alter v. Bank of Stockham, 53 Neb. 223, 73 N. W. 667, have gone further in that direction than we are willing to go.

The only proof with reference to the disposition of the ten steers, which were shipped to Kansas City, was the testimony of Chilcutt's brother, who lived in New Mexico, to the effect that a man by the name of Fish from Oklahoma came out there, rounded up and shipped a large number of cattle, and there were ten head of the Hastings steers included in that shipment. There was some testimony by M. R. Chilcutt that the First National Bank of Muskogee sent Fish to New Mexico to check up on different chattels in which the bank was interested. Plaintiff offered in evidence an account of sales from the Witherspoon Live Stock Commission Company of Kansas City, which contained a notation that there were 20 steers included in a certain shipment of cattle, belonging to M. R. Chilcutt, and that the sale price for said steers was $644.60. This account of sales contains the following:

"Sold for account of M. R. Chilcutt shipped from Texaline, Texas."

The account then shows numerous items of cattle, included among which are the 20 head of steers. Although the foregoing account of sales was not admitted in evidence

because not properly identified, M. R. Chilcutt testified that he did not remember anything about it, but judged that he received it since that was the custom of the commission company to forward accounts of sales to the shipper. He also testified that he did not receive the proceeds from 20 head of steers, but that said proceeds were received by the First National Bank of Muskogee. The offered proof in no wise tended to identify these 20 head of steers as belonging to the 172 head, which were covered by the mortgage. Since one of the plaintiff's witnesses testified that only ten head of the Hastings steers were shipped by Fish from New Mexico, and the offered account of sales showed the sale of 20 head shipped by M. R. Chilcutt from Texaline, Tex., we fail to see that there was any substantial evidence from which the court might have found that the Muskogee bank sold any of the Hastings steers and received the proceeds.

This action was treated by both parties and the trial court, as one in equity, and plaintiff maintains that position in this court. A jury was impaneled, but treated by the court as serving only in an advisory capacity. Upon the close of plaintiff's evidence when the demurrer was presented, the jury was disregarded and discharged by the court. No exception was taken or preserved by plaintiff to the court's action in discharging the jury, and it makes no difference, under this state of the record, whether the action is one in equity, or one at law. There is sufficient competent evidence to support the findings and judgment of the trial court in either case.

Counsel for plaintiff argues at considerable length that the trial court erred in excluding from the evidence plaintiff's exhibit B, which was the account of sales above referred to. This instrument was in no sense identified, except in so far as it spoke for itself. In so far as we are able to see, it, standing alone, had no evidentiary value upon the issues of the case. We think the court committed no error in excluding it. Counsel also complains, in a general way, of the court's excluding other evidence offered by plaintiff, and of admitting other evidence on cross-examination over plaintiff's objection. We have carefully read all of the evidence and the proceedings at the trial, and we are of the opinion that no reversible error was committed in any of these particulars.

Our views, hereinabove expressed, render it unnecessary to pass upon any other question raised by p'aintiff, or by the cross-

appeal. The judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.