FOURTH NAT. BANK OF TULSA
v. EIDSON.

No. 32963.   Dec. 16, 1947.

Rehearing Denied May 22, 1951.

Second Petition for Rehearing
Denied Sept. 25, 1951.

*236 P. 2d 491.*

Bush, Gable & Gotwals, Tulsa, for plaintiff in error.

Hughey Baker, Tulsa, for defendant in error.

CORN, J. This is an appeal by defendant Bank from a judgment rendered upon a jury's verdict in the district court of Tulsa county. It is not urged on appeal that the evidence is insufficient to support such verdict and judgment, thus all questions of fact supported by any competent evidence are resolved in favor of plaintiff. Hence, it is unnecessary to set forth a lengthy recitation of the pleadings and the evidence, and the following statement may be considered as the facts of the case as determined by the jury.

Plaintiff was a merchant and rancher residing at Eagle Pass, Tex. Defendant, H. V. Weaver, was a rancher living at Manford, Okla. For some time Weaver had handled his business affairs through the defendant bank, and had been extended considerable credit prior to, and during the course of events out of which this action arose.

About June 5, 1943, plaintiff shipped 338 steers to Weaver to be pastured in Creek county, advancing the freight bill and part (one-third) of the pasturage. Weaver was to share in the profits of the venture in return for his efforts. The cattle did not do well and upon plaintiff's suggestion that they be shipped back to Texas, Weaver offered to buy them. November 15, 1943, plaintiff sold him the 338 steers, two to five years old, each branded with plaintiff's holding brand, a wine glass mark, on the right side, for $17,760 or $52 per head.

The purchase price was secured by a mortgage in plaintiff's favor for the full amount, such mortgage being filed in Creek county November 15, 1943, and the debt secured thereby being due August 15, 1944. In the mortgage, following description of the cattle, the following provision was typewritten:

" . . . Also in the event that I should dispose of any or all of said mentioned livestock I will remit at once all the proceeds of such sale to D. A. Eidson."

The fourth provision in the body of the mortgage form was as follows:

"No part of said mortgaged property shall be sold or disposed of in any manner by said mortgagor, without the written consent of the mortgagee."

Weaver had applied to defendant for an extension of indebtedness and an additional loan. This application showed these cattle encumbered to the extent of plaintiff's mortgage, and the security was inspected by defendant's representative. The defendant's mortgage described 261 steers, 180 cows and 40 calves, carrying different brands from the cattle covered by plaintiff's mortgage. Weaver's total indebtedness amounted to $24,500.

Early in 1944 Weaver began selling off the cattle covered by defendant's mortgage and reducing his indebtedness. When a sale was made a notation of the number of cattle sold and the amount they brought would be itemized on Weaver's note and the remaining balance shown. By July 17, 1944, a total of 439 head of cattle listed as security on defendant's mortgage had been sold, and his indebtedness reduced to $16,741.21.

July 17, 1944, and before plaintiff's mortgage was due, Weaver shipped 140 steers to Kansas City for sale. The evidence established that these cattle bore plaintiff's wine glass brand, and were thus identified and shown to be part of the cattle mortgaged to plaintiff. Of this shipment 140 steers brought $8,-727.90 net. At Weaver's direction this was deposited in a Kansas City bank to the credit of defendant. This amount was credited on Weaver's note in defendant's bank, although the customary notation concerning the number of head sold was not made.

Plaintiff finally sent a representative into this state to make inquiry about the cattle covered by his mortgage. Investigations were begun which revealed that Weaver no longer had the cattle in his possession, and that this particular lot of cattle bearing plaintiff's brand had been handled in the manner above set out. The proceeds thus were traced into defendant bank where the amount derived from the sale had been applied upon Weaver's indebtedness.

March 13, 1945, plaintiff brought this action against Weaver and the bank to recover $10,643 plus interest, upon the theory Weaver kept part of the cattle in Creek county and defendant had actual and constructive notice of plaintiff's rights under the mortgage, that acting together they caused the cattle to be sold and the proceeds applied upon Weaver's note; that defendant's claim was inferior to plaintiff's and under the terms of the mortgage Weaver became trustee of the proceeds for plaintiff's benefit as against defendant, the funds from the sale having been received by defendant with knowledge of their source and trust character.

Defendant denied Weaver was its agent or that it acted with him in the sale, and denied any credits upon his indebtedness resulted from a sale of plaintiff's security, or that the money received from Weaver was trust funds upon which plaintiff had a lien; and if he ever became a trustee of the funds (derived from the sale) defendant had no knowledge thereof. The pleadings were amended to conform to the proof and defendant offered evidence that it forebore exercise of a valuable right (due to eight months lapse before plaintiff brought suit) in that defendant was lulled into a sense of security and having no knowledge the funds were trust funds, by accepting the payment made, forebore exercise of its right of proceeding against Weaver in July when the note was due, which defendant would have done had it known this money was trust funds and that Weaver was unable to pay upon this indebtedness.

The case was submitted to the jury under instructions from the court and a verdict was returned for plaintiff for $8,727.90.

The assignments of error upon which defendant predicates its claim for reversal of this judgment are presented under three propositions. It is first contended that where mortgaged property is sold by the mortgagor without consent of the mortgagee, the proceeds of such sale are not trust funds. This may be a true statement of the rule applicable when the facts justify the finding that the mortgagee did not consent to the sale. However, under the facts reflected by this record such rule has no application.

46 O. S. 1941 §71 provides as follows:

"Every mortgagor of personal property in this state, who with the consent

of the mortgagee, or his assignee, shall sell such mortgaged property, or any part thereof, while the mortgage remains in force and unsatisfied, shall be deemed and conclusively held to be the trustee of the funds received upon the sale thereof, for the benefit of such mortgagee, or assignee, to the extent of the indebtedness secured thereby, or any balance due thereof."

The pertinent provisions of the plaintiff's mortgage are set forth above. The question resolves itself into a matter of determining whether by the typewritten provision of the mortgage plaintiff impliedly gave his consent to a sale of the cattle by Weaver without the written consent mentioned in the body of the mortgage. It seems that this undoubtedly was the intention of the parties.

All provisions of a contract must, if possible, be given effect. Rushing v. Manhattan Life Ins. Co., 224 Fed. 74; Fairbanks, Morse & Co. v. Miller, 80 Okla. 265, 195 P. 1083.

In Sperry et al. v. Renner et al., 194 Okla. 285, 149 P. 2d 781, we considered a mortgage clause providing that upon any sale by the mortgagee the proceeds were to be applied in discharge of indebtedness, and any surplus was then to be paid to the mortgagor.

Therein we held that such provision in a chattel mortgage, considered in connection with the evidence, established that the mortgagee gave implied consent to a sale of the mortgaged property, upon the condition that the proceeds be applied to the mortgage debt. Cited in support of such holding: Jones Chattel Mortgages and Conditional Sales, Bowers Edition, section 457; 10 Am. Jur. 845; Babbitt Bros. Trading Co. v. Morely, 28 Ariz. 589, 238 P. 392. To the same effect see 11 C. J., Chattel Mortgages, §340; 14 C.J.S., Chattel Mortgages, §262 (b).

The typewritten provision of the mortgage controls over the printed condition requiring written consent of the mortgagee before sale. See Witt v. Westheimer, 182 Okla. 645, 79 P. 2d 250; Bartley v. Summers, 187 Okla. 16, 100 P. 2d 847. The terms of the mortgage impliedly gave Weaver permission to sell the cattle at his own discretion, subject only to remitting the proceeds to plaintiff.

Defendant cites and relies upon Oklahoma State Bank of Davis v. First Nat. Bank of Muskogee, 142 Okla. 50, 285 P. 117, and Bank of Jefferson v. First Nat. Bank of Medford, 158 Okla. 37, 12 P. 2d 540, as sustaining its contention. Consideration of these decisions reveals both are cases holding that where mortgaged chattels are sold *without* the mortgagee's consent, the proceeds of the sale are not trust funds. Thus these cases are inapplicable to the present case.

Having concluded that under the mortgage Weaver had the implied right to sell the cattle, it follows that under the terms of the statute, supra, the proceeds derived from the sale of the mortgaged steers were trust funds. It is recognized as a sound rule that where property is impressed with a trust, a change in the state or form does not divest the property of its trust character, so long as it remains capable of clear identification. Ward v. U. S. (Okla.) 139 F. 2d 79. Equity will follow trust funds through any number of transmutations and restore it to the owner so long as it can be identified. 65 C.J. Trusts, §891; Pollock v. Leonard & Braniff, 112 Okla. 276, 241 P. 158; Fidelity National Bank v. Copeland, 138 Okla. 19, 280 P. 273.

Defendant's second contention is as follows:

"A trust beneficiary may bring an action at law against the trustee for wrongful conversion of funds or an action against a third person to recover the fund and enforce the trust upon such fund in equity, but since the same are inconsistent remedies they cannot be pursued in the same lawsuit, and it is reversible error for the court to refuse to require the plaintiff to elect between such inconsistent remedies."

The purpose of the doctrine of election of remedies is said to be, not prevention of recourse to any remedy, but the prevention of double redress for any single wrong. In 18 Am. Jur., Election of Remedies, §10, is found the following statement.

"Election is predicated on the existence of a state of facts that furnishes the party an option to do either the one thing or the other. There must be the possibility of the adoption or rejection of a theory of action. This principle applied to the doctrine under consideration gives us the well-established proposition that an election of remedies presupposes a right to elect. There must be present such a condition of facts as affords the party a choice of remedies inconsistent in character, as where a choice lies between remedies at law and in equity or where a suit may be brought on a given state of facts either on contract or in tort or by attachment or replevin. If in truth there is only one remedy, and not a choice between two or more, the doctrine of election does not apply, as where a party misconceives his remedy and the one on which he expected to rely was never available to him. . . ."

Plaintiff obviously could not proceed against Weaver for conversion, having given his consent to the sale of the cattle. The proceeds of the sale passed out of Weaver's hands and into defendant's possession where they were applied upon his indebtedness. Plaintiff alleged a concerted action between Weaver and defendant, resulting in trust funds being placed in defendant's hands, and was able to prove the transaction and trace the identical funds. But, the trustee no longer had the money when plaintiff discovered the facts of the matter. Thus it was necessary to proceed against him as trustee, and against the defendant as holder of the funds under him.

The third proposition urged by defendant is that having received trust funds in payment of a debt, without knowledge of the trust character, and relying upon such payment failed to proceed with a remedy that might have resulted in collection of the debt from other assets, the bank became a bona fide purchaser and the funds are not subject to recovery by the trust beneficiary.

It is defendant's argument that because of the receipt of the proceeds from the sale and the crediting thereof to Weaver's indebtedness, defendant was lulled into a sense of security and forebore exercise of its right to call his note and force collection of the debt until after defendant learned this money was claimed as trust funds, at which time the debt was uncollectible. We are of the opinion the evidence disclosed by the record is sufficient to preclude application of the rule urged.

Plaintiff's mortgage was filed in Creek county and gave defendant constructive notice of the existence thereof. Drum Standish Commission Co. v. First Nat. Bank & Trust Co., 168 Okla. 400, 31 P. 2d 843. The financial statement, made by Weaver for the purpose of securing extension of his indebtedness, stated that 338 head of cattle listed thereon were encumbered by a mortgage.

The court instructed the jury that the fund representing the sale price of the cattle covered by the plaintiff's mortgage constituted trust funds and would be such in the hands of the defendant, the Fourth National Bank; that said Bank would be liable to the plaintiff as trustee for such funds coming into its possession if it had knowledge of the source thereof. The jury by its verdict determined under this instruction that the bank received from the sale price of the cattle covered by plaintiff's mortgage the sum of $8,727.-90. The evidence reasonably supports such determination.

The trial court correctly held that Weaver sold the cattle covered by plaintiff's mortgage with consent, and the sale price thereof constituted trust funds. The jury found under the foregoing instruction of the court that $8,-727.90 of the sale price of such cattle was appropriated by the Fourth Na-

tional Bank. This appropriation was made without consent. The bank had no lien on the cattle which the foregoing sale price represented. The cestui que trust could follow the sale price of the cattle and the liability of the defendant bank as a trustee thereof could be asserted at any time within the statutory period, the plaintiff having done nothing to lead the bank to assume an adverse position. The bank is liable without actual knowledge of the trust character of the funds under the circumstances maintaining here. After it pays the trust fund received by it to the plaintiff, it will be in the same position that it was in before Weaver wrongfully made the payment to it.

Judgment affirmed.

HURST, C. J., and B A Y L E S S, WELCH, ARNOLD, and LUTTRELL, JJ., concur. DAVISON, V. C. J., and GIBSON, J., dissent.

---

DAVISON, J. (dissenting). Since the promulgation and adoption of the majority opinion in this case I have become convinced that it reaches an erroneous conclusion. Therefore, I dissent thereto and think it proper to express my views. A brief statement of the facts will also be made.

In 1943, the defendant, H. V. Weaver, became indebted to the defendant, the Fourth National Bank of Tulsa (Tulsa county), in an amount which by the end of the year had been increased to $24,500. This indebtedness was secured by chattel mortgage upon some 481 head of steers, cows and calves. In November of that year defendant Weaver purchased from plaintiff 338 additional head of Mexican steers, branded in a certain manner, and, to secure the purchase price thereof, executed a chattel mortgage covering the same in the sum of $17,576, which was filed in the office of the county clerk of Creek county, Oklahoma, the county where the cattle were kept.

These cattle had been shipped by plaintiff to defendant Weaver, in June, 1943, for grazing and fattening, but, when they did not progress as expected, the sale was negotiated. The mortgage was prepared and signed by Weaver in Creek county, Oklahoma, and mailed to plaintiff at his residence in south Texas. It contained, in the printed form, the proviso that "No part of said mortgaged property shall be sold or disposed of in any way by said mortgagor without the written consent of said mortgagee." Typed into the mortgage, immediately following the description of the property, was the provision, "Also in the event that I should dispose of any or all of said mentioned live stock I will remit at once all the proceeds of such sale to A. D. Eidson."

On July 15, 1944, without any communication from plaintiff with regard thereto, defendant Weaver sold 140 head of the steers covered by plaintiff's mortgage for $8,727.90, which amount was, by the commission company making the sale, delivered to the defendant bank in the manner directed by defendant Weaver. In March, 1945, plaintiff brought this action against the bank and Weaver. The case was tried to a jury, resulting in a verdict and judgment for plaintiff and against both defendants, from which the defendant bank has perfected this appeal.

The majority opinion adopts plaintiff's theory that the above-quoted provision which was typed into the mortgage superseded the printed provision requiring written consent of the mortgagee to a sale of the mortgaged property, making the sale of the property by the mortgagor one with consent. That being so, the funds derived therefrom constituted trust funds in the hands of the defendant bank which were recoverable by plaintiff under the provisions of 46 O.S. 1941 §71, as follows:

"Every mortgagor of personal property in this state, who with the consent of the mortgagee, or his assignee, shall sell such mortgaged property, or

any part thereof, while the mortgage remains in force and unsatisfied, shall be deemed and conclusively held to be the trustee of the funds received upon the sale thereof, for the benefit of such mortgagee, or assignee, to the extent of the indebtedness secured thereby or any balance due thereof."

The application of the above statute hinges squarely upon the question of whether or not the mortgaged cattle were sold with the consent of the mortgagee, plaintiff herein. This interpretation of the act was announced shortly after its passage. In the case of Bank of Jefferson v. First Nat. Bank of Medford, 158 Okla. 37, 12 P. 2d 540, this court held:

"Senate Bill No. 14, chapter 4, sec. 1, Session Laws of 1927, applies only to sales of mortgaged personal property, with the consent of the mortgagee, while the mortgage remains in force and unsatisfied, and the effect thereof is so limited by both the title and the body of the act."

Therefore, plaintiff's rights, if any, are entirely dependent upon the interpretation of the chattel mortgage contract. With reference to such situations, 15 O.S. 1941 §167 provides:

"Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and particular contract in question the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

But, "The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with every other provision if possible, and that construction adopted which gives effect to every part of the contract." Sullivan v. Gray, 182 Okla. 487, 78 P. 2d 688.

In analyzing the contract herein, in the light of the last-cited rule, the printed provisions that Weaver could not sell the cattle without written consent from plaintiff is not necessarily repugnant to the typed-in provision relative to the disposition of the proceeds from a sale. Weaver was not, by the printed provisions thereof, prohibited from selling the mortgaged cattle. He was only prohibited from selling until he obtained written consent from plaintiff. Once that consent was obtained, the restriction of the typed-in portion of the mortgage governed his handling of the proceeds. He was required thereby to "remit at once all the proceeds of such sale to A. D. Eidson." This is not a strained construction but is rather the natural one because of prior business relations between the parties. The situation between them was such that, had the additional restriction not been typed into the contract, Weaver probably had the implied authority to buy other cattle for plaintiff with the proceeds.

In the case of Babbitt Bros. Trading Co. v. Marley, 28 Ariz. 589, 238 P. 392, there was presented a fact situation very similar to that herein involved. Therein, in both the majority opinion and the dissenting opinion, the two conclusions, either of which might be reached, are discussed, together with the line of reasoning supporting them. It is readily apparent that the construction to be given the chattel mortgage in the case at bar should be in harmony with the intent of the contracting parties and, although the meaning of a written contract is ordinarily a question of law for the court, where the contract is susceptible of more than one construction and there is a dispute as to what was intended by the parties and that issue is properly raised by the pleadings, the construction of the contract is a mixed question of law and fact determinable by a jury under proper instructions of the court. Mitchell v. Vogele, 125 Okla. 176, 256 P. 906; Clark v. Herbert, 132 Okla. 272, 270 P. 329.

This reasoning is in harmony with the general rule that authority given the mortgagor of chattels by the mortgagee to sell the mortgaged property and account for the proceeds of the sale may be inferred. Such authority depends upon the intent of the parties and is a question of fact for the jury. Jones on Chattel Mortgages, §457; Ziegler v. Ilfeld, 52 Colo. 275, 122 P. 56; Gorin Sav. Bank v. Early (Mo. App.) 260 S. W. 480.

It is my opinion that the following instruction, given by the trial court and excepted to by defendants, erroneously took from the jury the determination of that question of fact:

"You are instructed that, if you find and believe from the evidence in this case that the 140 head of cattle which were sold by Weaver through Swift & Henry Livestock Commission Company in Kansas City on July 17, 1944 were part of the cattle on which the plaintiff, A. D. Eidson, has the mortgage which is in evidence, and you further find that such moneys were paid to the Fourth National Bank, then and in that event you are instructed that, under the laws of the State of Oklahoma, the defendant Weaver was a trustee of this sum of money, and when the money was placed in the Fourth National Bank, that the bank was simply holding that money for the trustee Weaver, and the money belonged to the plaintiff Eidson, and that plaintiff Eidson would be entitled to recover said money with interest thereon from the 17th day of July, 1944.

"However, in this regard, if you find that the steers that were sold on July 17th, 1944, were not covered by the mortgage from Weaver to Eidson, then the plaintiff cannot recover.

"And further, if you find that some of the steers that were sold on July 17, 1944 were not covered by the mortgage, then you will deduct from the amount of money that these steers sold for on July 17, 1944, and the plaintiff would only be entitled to recover for the number of steers sold which were actually covered by the mortgage.

"You are further instructed if the bank did not know that this money came from the sale of mortgaged property, if you find it was mortgaged, and that the bank could have gotten the money owing it from other resources of Weaver, which were later lost to it, then your verdict should be for the defendant Bank."

I also think that the above-quoted instruction took from the jury the determination of whether or not the defendant bank had notice of the origin of the funds when they were received by it and applied to Weaver's indebtedness. As was held in the case of Security State Bank of Melrose, Minn., v. First Nat. Bank of Ismay, 78 Mont. 389, 254 P. 417, the defendant bank was not a creditor to whom the filing of the mortgage imported notice, but, for the sake of argument, assuming that the bank had actual knowledge of the mortgage, still, "This knowledge would not alone be sufficient to render the defendant liable; the plaintiff was required to show that the defendant had knowledge of the origin of the funds deposited."

For these reasons, I think the judgment should be reversed and the cause remanded for a new trial, and I therefore respectfully dissent.