The **GEOLOGRAPH COMPANY, Inc.,** an Oklahoma corporation, Appellant,

v.

**CITIES SERVICE OIL COMPANY,** a Delaware corporation, Appellee.

No. 5641.

United States Court of Appeals Tenth Circuit.

Jan. 2, 1958.

Rehearing Denied Feb. 4, 1958.

Roy C. Lytle and Mart Brown, Oklahoma City, Okl. (Lytle, Johnston & Soule, Oklahoma City, Okl., were with them on the brief), for appellant.

Richard W. Fowler, Oklahoma City, Okl. (Charles B. Cochran, Oklahoma City, Okl., Lonnie Corn, Bartlesville, Okl., Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, Okl., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

■ The Geolograph Company, Inc. has appealed from the judgment of the United States District Court for the Western District of Oklahoma in a declaratory judgment proceeding wherein that court has construed contractual rights existing between appellant and appellee, Cities Service Oil Company, as violated by an agreement consummated between appellant and the Thompson Equipment Company, an Oklahoma corporation. All further remedial procedures were reserved and left undetermined by the trial court upon direction that its declaration construing the contracts be entered as a final judgment. Such procedure is proper, 28 U.S.C.A. §§ 2201, 2202.

The agreement requiring interpretation was entered into November 6, 1942, between Cities Service and P. B. Nichols and, since under the governing Oklahoma statutory law inquiry must be made into the facts and circumstances then existing,[1] a recitation of the background of events and persons is necessary.

In 1936, while employed by the Indian Territory Illuminating Oil Company as a geologist P. B. Nichols invented an instrument to record drilling time and other pertinent data during the course of oil or gas drilling. Because of aid I. T. I. O. gave Nichols in patenting and producing these machines, now known and trade-marked as Geolographs, I. T. I. O. became owner of one-half of Nichols' right, title and interest in his invention and in the application for patent. This arrangement was reduced to writing on August 30, 1940, in a contract entitled "Agreement Covering Geolograph" by which I. T. I. O. was to retain title to the six instruments which it then had in use; rental income from four other instruments and instruments yet to be manufactured were to be kept in a joint account.

On July 31, 1941, the appellee Cities Service Oil Company purchased the property of I. T. I. O. and I. T. I. O. assigned its undivided one-half interest in the invention of Nichols to that company. Nichols and Cities Service Oil Company continued to operate the Geolograph business on a joint account basis, renting the machines to other drillers. The joint account employed a full-time employee to maintain and install the instruments for less than a year's time. At all other times employees of Cities Service Oil Company did work in connection with the Geolograph business but no part of their salaries was paid by the joint account. During this time no further geolograph instruments were manufactured, but the joint account owned twenty-four geolographs which it used for rental purposes.

Shortly after Cities Service Oil Company became half-owner of the business, Nichols submitted to that company a proposal for the purchase of its interest. Negotiations between Nichols and the company resulted in the contract executed November 6, 1942. Material clauses to the present inquiry include:

"1. *Property Involved:*

(a) Letters Patent No. 2,287,819, which were on June 30, 1942 issued to Paul Briscoe Nichols and Cities Service Oil Company for improvements in 'Device for Recording Drilling Operations',

(b) U. S. Certificate of Registration No. 390,122, which was on

---

1. 15 Okl.Stat.Ann. § 152:
    "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

September 9, 1941 issued to Indian Territory Illuminating Oil Company for their Trade-Mark 'Geolograph';

(c) That certain License and Option Agreement dated July 9, 1950 between Geergo Mizell of Dayton, Texas and Indian Territory Illuminating Oil Company;

(d) 24 Machines (Geolographs) jointly owned and 6 machines (Geolographs) owned 100% by the Company. Of the 24 Machines jointly owned, 21 thereof are being sold under this agreement to Nichols and are to be and become his exclusive property under the terms of this agreement. * * *

(e) The Joint Account Balance * * *

(f) All amounts due and owing or to become due said Joint Account * * *

(g) All other property of a personal nature used or kept for use in connection with the conduct of said joint adventure business."

* * * * * *

"7. *Consideration:*

"It is agreed that the full consideration to be paid by Nichols to Company as the purchase price for Company's interest in said joint adventure and said Patent and said Certificate of Registration, and all other property used and kept for use in connection therewith and herein agreed to be sold shall be as follows:

"(a) *Primary Payment:* The sum of $3,235.80, which shall be known as the primary payment and which said sum shall be payable as follows:

"$100.00 on the 1st day of November, 1942; $100 on the 1st day of December, 1942, and likewise $100.-00 on the 1st day of each calendar month thereafter until the total sum of $2,400.00 has been paid. All the balance of said amount then remaining unpaid shall be due and payable on the 1st day of the next succeeding calendar month.

"Contemporaneously with the execution of this agreement, Nichols will execute and deliver to Company his promissory note payable to Company in the amount of this primary payment, which shall be due and payable as in this paragraph provided. Said note shall draw interest at the rate of 6% per annum from the date thereof on the unpaid balance. As security for the payment of said note, Nichols agrees to give Company a mortgage on all the machines (Geolographs), title to which he is acquiring under this agreement.

"(b) *Royalty:* Company shall receive and be paid by Nichols during the life of said Patent an overriding royalty based on gross rentals received on said Geolographs. All calculations of gross rentals to be less any sales tax charged and collected. The overriding royalty payable hereunder shall be computed and paid according to the following schedule:

Gross Rentals Annually:

$0 to $6,000.00, no royalty

$6,000.00 to $10,000.00, 5% royalty on excess over $6,000.00.

$10,000.00 to $15,000.00, 7½% on excess over $10,000.00.

For all gross rentals in excess of $15,000.00, 10%.

"(c) *Royalty on Rentals Paid by Company Contractor:* Company shall receive during the life of the Patent a royalty of 30% on rentals paid by Company's contractors for use of Geolograph on wells drilled for Company as operator of the property. Such rental shall not be included when computing gross rentals under Subdivision (b) of paragraph 7.

"All royalty under Subdivisions (b) and (c) of Paragraph 7 shall be

payable one year from date of contract and annually thereafter.

"(d) *Royalty on Sales of Machines*: If any of the machines covered by this agreement are sold by Nichols, or if hereafter Nichols should engage in the business of manufacturing and selling Geolograph Instruments, then during the life of said Patent, Nichols shall pay to Company as royalty on any machine sold 10% of the sales price thereof.· The minimum sales price for said machines is fixed at $750.00.

"(e) *Proration of Insurance:* If any of the machines covered by this agreement are destroyed or damaged by fire to the extent that such machine is taken out of service, in such event Company shall receive from Nichols 10% of the moneys recovered by Nichols from his insurance carrier on account of such damage or destruction of said machine or machines.

\*　　\*　　\*　　\*　　\*　　\*

"9. *Continuation of Business:*

"Nichols agrees to continue and carry on said Geolograph business in a good and workmanlike manner and use his best endeavors to make said business profitable and successful. While it is stated that Nichols expects to continue his employment with the Company as Geologist, he agrees to give as much of his personal time and attention to said Geolograph business as the exigencies of his employment with Company will permit."

From the date of the execution of this contract until July 1, 1943, P. B. Nichols operated the Geolograph business under the name of Nichols Geolograph Company. During that period no Geolograph machines were manufactured or sold and payments were made in accordance with paragraph 7(b) of the contract.

P. B. Nichols then entered into a partnership arrangement by forming a company known as The Geolograph Company, which was later incorporated in Oklahoma, to carry on the Geolograph business subject to the terms of the questioned contract. During the time from July 1, 1943 to May 1, 1947, The Geolograph Company manufactured one hundred seventy-six Geolograph machines.

About June 1, 1951, The Geolograph Company, Inc. initiated an aggressive promotion of the instruments, organizing ten separate corporations to handle the leasing and servicing of Geolographs in various parts of the country. The Geolograph Company, Inc. rented machines to the service companies, which in turn rented them to independent drillers.

In December, 1954, some 1259 Geolographs were in service. At that time the instant controversy was triggered by the execution of a contract of sale from The Geolograph Company to the Thompson Equipment Company of all the instruments together with other covenants, described by the trial court's judgment as:

"The terms and conditions of plaintiff's transaction with Thompson cannot, under any reasonable construction, be said to involve merely the 'sale' of geolograph machines. The transaction is clearly a sale of the geolograph rental, leasing and servicing business, together with a covenant not to compete with the purchaser, and a further covenant which precludes the plaintiff from engaging in either the manufacture, licensing, or sale of the patented device, except with the consent of Thompson. \* \* \*"

There is no dispute on appeal covering this interpretation and the record contains no assertion of subjective bad faith, fraud or sham as the foundation of the Geolograph-Thompson agreement. Nichols testified that, in view of ever-increasing competition, the burden of a royalty upon gross sales [2] and the prob-

2. Cities Service Oil Co. v. Geolograph Co., Inc., 208 Okl. 179, 254 P.2d 775.

lems of taxation, it was to his over-all financial advantage to retrench under the contract provisions. And although, as Cities Service points out, the rental of Geolographs had been profitable for many years [3] that fact cannot be determinative of the right of Geolograph to alter or continue its method of business. Nor was Geolograph bound to continue or adopt a method of business most advantageous to the royalty owners. Philadelphia Storage Battery Co. v. Radio Corporation of America, 22 Del. Ch. 211, 194 A. 414. The rights of the parties are limited and determined entirely by their written contract.

At the time appellant and appellee contracted each with the other the development of the geolograph business was in its infancy. The instruments were not generally recognized in the industry and manufacture was either greatly restricted or prohibited by wartime restrictions. Twenty-four units were in existence which had theretofore been rented to drillers or used from time to time by Cities Service and its predecessor. Potential income from these two known sources were covered by the contract in paragraphs 7(b) and (c) relating to rental royalties and company rental receipts. But we think it clear that the parties did not intend to predict, nor could they, whether the business would achieve success through rentals alone or by development through manufacture and sale. Either or both were contingencies and the contract consequently provided for both although no sale had then been made nor was immediately prospective. The acknowledgement of this intent must be recognized by several references to "manufacture and sale" throughout the contract but most emphatically in paragraph 7(d) where the parties agreed " * * * if hereafter Nichols should engage in the business of manufacturing and selling Geolograph instruments * * *."

As we interpret the contract Geolograph had the power to enter the business of manufacture and sale of the instruments and the contract did not make that phase of the business less important or subsidiary to the outlet of the instruments through rentals. The fact that actual and successful development of the invention occurred through rentals does not aid or alter the express words of the contract although the parties' perspective may be dimmed by the self-interest inherent in the continuance of financial reward or the discontinuance of financial burden. Cities Service Oil Co. v. Geolograph Co., Inc., supra.

█ Lending support to the language of the contract is Cities Service's assignment of its interest in the patent to Nichols, which assignment carries with it the exclusive rights to make, use and vend the invention. Broderick v. Neale, 10 Cir., 201 F.2d 621. Cf. Watson v. United States, 10 Cir., 222 F.2d 689; Dairy Queen of Oklahoma, Inc., v. Commissioner of Internal Revenue, 10 Cir., 250 F.2d 503.

█ The second aspect of this case is concerned with the application of appellant's contract with Cities Service to the sale made to Thompson Equipment Company. The trial court held this sale violative of the parties' contract, particularly paragraph 9 thereof, and we are in accord. The entire contract must be considered in order to determine what is intended by the obligation of Nichols to "carry on said Geolograph business." Fourth National Bank v. Eidson, 205 Okl. 145, 236 P.2d 491; 15 Okl.Stat.Ann. § 157. The reconciliation of 7(d) with paragraph 9 providing for the continuation of the business can be effected with regard to the entire contract. It was the intent of the parties under the I. T.

3. Cities Service had received in excess of a half million dollars in royalties. The sale to Thompson foreclosed any possibility of further royalty income and would limit Cities Service to a percentage of the selling price of instruments. This amounted to $123,000 upon the initial sale to Thompson, which amount was tendered to but refused by Cities Service. As indicated, we hold that these practical aspects of the matter do not control the rights of the parties.

I. O.-Nichols contract to go into business together—the business was to find a market, either through sales or renting, for Geolograph instruments. The Cities Service-Nichols contract gave Nichols power to make decisions concerning the business, but consideration was to be paid in accordance with the continuing success of the business. We find no conflict between the two provisions. We do find a conflict between a duty to carry on a business involving the sale or rental of Geolographs and an agreement not to rent, not to compete and not to sell except by permission. The sale to Thompson Equipment is in substance the sale of a going business, carrying with it the incidental sale of the existing instruments. Such clearly violates appellant's obligation to continue the business as contemplated by the parties in 1942.

Appellant complains that if it does not have the power to make a contract for the sale of all of the assets of its business, the assignment of the patent is destroyed. The mere fact that payment of consideration is linked to subsequent business and varies in amount according to the success achieved by the business does not detract from the assignment or the patent rights granted thereby. Watson v. United States, supra; Dairy Queen of Oklahoma, Inc., v. Commissioner of Internal Revenue, supra; Kavanagh v. Evans, 6 Cir., 188 F.2d 234; General Finance Corporation v. Dillon, 10 Cir., 172 F.2d 924; Green v. Le Clair, 7 Cir., 24 F.2d 74. In other words, the terms of the transfer or qualifications of conveyance do not affect the patent conveyed if the "bundle of rights" constituting the patent are intact, but instead bind the parties to performance by way of consideration for the conveyance.

We conclude that the declaration of the trial court that the "sale" to Thompson Equipment Company is not a sale within the contemplation of the agreement of November 6, 1942, is correct but that its declaration that the Geolograph business means "the business of renting, leasing and servicing Geolographs" should be expanded to include the manufacture and sale of the instruments.

The case is remanded with directions to modify the judgment in accord with the views herein expressed.