**BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY, Oklahoma, Appellant,**

v.

**Frank S. HARKEY, Appellee.**

**No. 49790.**

Court of Appeals of Oklahoma, Division 2.

June 5, 1979.

Released for Publication by Order of Court of Appeals July 5, 1979.

S. M. Fallis, Jr., Dist. Atty., Andrew B. Allen, Asst. Dist. Atty., John Reif, Law Clerk, Tulsa, for appellant.

Bert C. McElroy, Tulsa, for appellee.

BRIGHTMIRE, Judge.

Did the trial court err in issuing a pre-trial order prohibiting the appellant-plaintiff from proceeding to trial on both of the causes of action it alleged by requiring it to elect one to try?

### I

In its petition as amended the Board of County Commissioners of Tulsa County, Oklahoma, alleged that the defendant, Frank S. Harkey, owned a quantity of dynamite, blasting caps and other blasting paraphernalia which he stored in Tulsa County in a manner so negligent that his 15-year-old son, Glendon Harkey, on November 6, 1973, was able to get possession of enough of it to place on and destroy an $18,000 D6 tractor owned by the county. Moreover, pleaded the county, defendant's conduct was reckless and malicious entitling it to $10,000 for punitive damages. This was plaintiff's first cause of action.

Its second cause was based upon the provisions of 23 O.S.1971 § 10 under which a county is entitled to recover up to $1,500 in damages " . . . from the parents of any minor under the age of eighteen (18) years, living with the parents at the time of the act, who shall [maliciously or wilfully destroy] property . . . belonging to the . . . county . . . ." The allegation was, of course, that the act of defendant's minor son complained of in the first cause of action was a wilful and malicious one causing more than $1,500 worth of damage entitling plaintiff to a judgment of a maximum of $1,500 against defendant under the statute.

One of defendant's pre-trial motions was for the court " . . . to require the plaintiff to elect between inconsistent *remedies* sought in its first cause of action and in its second . . . for the reason . . that *the allegations of said causes of action are mutually contradictory* and inconsistent in that the second cause . . . depends for its validity upon an independent intervening act . . . insulating the defendant . . . from any . . . negligence on his part." (emphasis added)

The case came on for trial May 4, 1976. After the parties announced ready, the court invited the lawyers to join him in his chambers where defendant renewed his motion to elect.

"The motion of the defendant will be sustained at this time," said the court. "Both parties have announced ready for trial. The Court will require the plaintiff to elect which remedy it intends to pursue."

After objecting, plaintiff elected to try its first cause, and, as we said earlier, suffered a defendant's verdict.

## II

■ The trial court was wrong in requiring the election because the county was not in pursuit of two remedies, much less two that were inconsistent. What plaintiff was forced to do, in effect, was a drop a basis for the recovery of some damage it allegedly sustained and, as a result, it received only a partial day in court. The error was founded, apparently, upon a misconception of the term "remedy" as it is used in the context of the election doctrine.[1] In this sense, the word refers not to the cause of action nor to any part thereof, but rather to the ultimate object of or end result sought to be achieved by the action's prosecution—in other words redress or relief as distinguished from the offended right which gave birth to the need for a remedy.[2] The maxim is an offspring of the estoppel principle whose roots are imbedded deeply in the soil of equity and which was created as a device to prevent double recovery.[3] To invoke the election doctrine, a party must show that his adversary had full knowledge of all material facts affecting plural available *remedies*, that the *remedies* sought are repugnant and inconsistent,[4] and that he has been injured as a result of plaintiff's pursuit of two such *remedies*.[5] A classic example of two incongruous remedies is a case in which a party seeks to foreclose a mortgage on a tract of land and to quiet title to it at the same time. Clearly, two different remedies are being sought in such case, and they are inconsistent in that the plaintiff's request for foreclosure of a mortgage lien on a given tract of land is inconsistent with his alternate request for quieting of his title.

1. The doctrine has confused many a judge. As Professor Fraser observed, it has been referred to as a judicial weed, denounced as a delusion, and he himself considers it to be " . . . an anachronism that should not have survived the adoption of code pleading." He adds, " . . . practically all who have discussed the doctrine state that it should be abandoned as a rule of procedure." Fraser, *Election of Remedies: An Anachronism*, 29 Okla.L.Rev. 1 (1976).

2. *Oklahoma Co. v. O'Neil*, Okl., 440 P.2d 978 (1968); *Higgins v. Durant*, 116 Okl. 152, 243 P. 732 (1926).

3. *Fourth Nat'l Bank of Tulsa v. Eidson*, 205 Okl. 145, 236 P.2d 491 (1951).

4. *Higgins v. Durant, supra*, footnote 2.

5. *First Nat'l Bank of McAlester v. Mann*, Okl., 410 P.2d 74 (1965). See also *Sisler v. Jackson*, Okl., 460 P.2d 903 (1969); *Mathews v. Sniggs*, 75 Okl. 108, 182 P. 703 (1919).

128 ■ ▮▮▮▮▮▮▮

Incidentally, in such a case, proof that plaintiff holds a mortgage on the land is repugnant to and negates proof of ownership—an essential allegation in the quiet title action.[6]

■ Here the county sought but a single remedy—damages—for the loss of its bulldozer. Its first cause was a common law action alleging a breach of duty on the part of the father which contributed to the cause of the loss and the prayer was for the full amount of the loss. The other cause was not based on defendant's breach of duty but upon strict liability imposed by statute which authorized recovery up to $1,500 if there is proof: (1) that the defendant's son was under 18 and lived with him at the time of the act, (2) that the boy maliciously or wilfully destroyed or aided in the destruction of the county equipment, and (3) of the value of the property destroyed.

Neither the proof necessary to recover under the first cause nor the relief sought was repugnant to or inconsistent with the proof of or relief sought under the second cause.

Plaintiff was entitled to have both of its theories for recovery submitted to the jury for resolution. *C. I. T. Corp. v. Shogren,* 176 Okl. 388, 55 P.2d 956 (1936).

### III

Defendant also contends that this appeal should be dismissed because plaintiff did not file a petition in error within 30 days from the date it was required to elect—May 4, 1976—notwithstanding a judgment disposing of the case was not rendered until May 6, 1976.[7] For support defendant cites 12 O.S.1971 § 990 which provides in material part that "An appeal to the Supreme Court may be commenced *from an appealable disposition* of a court or a tribunal by filing . . . a petition in error, within thirty (30) days *from the date of the final order or judgment sought to be reviewed,"*

(emphasis added by defendant) and 12 O.S. 1971 § 953 which says that "a final order" is one that " . . . in effect, determines the action and prevents a judgment . . ." The argument is that the order requiring the election had the effect of dismissing one of the two causes of action and, as to the rejected cause, " . . . the Order was one which 'determined the action' and 'prevented judgment,' . . . ."

■ The fallacy of this reasoning is that it overlooks (1) the cases construing the ambiguous language of § 953 contrary to defendant's contention and (2) the distinction between a final order and an interlocutory one. Dismissing one of two or more causes of action is not a final order within the definitive provisions of § 953. *LaVelle v. Fair Oil Co.,* Okl., 388 P.2d 13 (1963). Rather it is an interlocutory one and, therefore, according to *LaVelle,* its appellate review must await final disposition of the case of which it is a part. Moreover, even if the order had been granted an appealable status by 12 O.S.1971 § 952, an early appeal is optional, not mandatory, because the statute specifically provides that failure to prosecute a prejudgment appeal " . . . shall not preclude him [the aggrieved party] from asserting error in the order after the judgment or final order is rendered."

The judgment appealed is reversed and the cause is remanded with directions to grant plaintiff a new trial.

BACON, P. J., and NEPTUNE, J., concur.

---

6. Generally, when two incompatible remedies are sought, the facts underlying each situation are repugnant in that proof of one negates the facts underlying the other.

7. Plaintiff filed a petition in error on June 7, 1976. If the May 6 date controls, plaintiff's petition was timely filed because the 30th day—June 5—was Saturday giving plaintiff until the following Monday to file.